724 F.Supp. 1208 (1989)
Michael P. BAHNMILLER, Richard W. Frye, and The Vietnam Veterans of America, Inc., Plaintiffs,
v.
Edward J. DERWINSKI, Secretary of Veterans' Affairs, The United States Department of Veterans' Affairs, and The United States of America, Defendants.
Civ. A. No. 88-0732-A.
United States District Court, E.D. Virginia, Alexandria Division.
November 8, 1989.
*1209 Richard Crouch, Arlington, Va., and Bruce S. Deming, Van Ness, Feldman, Sutcliffe & Curtis, Washington, D.C., for plaintiffs.
Robert C. Erickson and Paula M. Potoczak, Asst. U.S. Attys., Alexandria, Va., for defendants.

MEMORANDUM OPINION
ELLIS, District Judge.

Introduction
For more than a century, statutory fee limitations have effectively excluded lawyers from the veterans' benefits claims arena.[1] Congress quite clearly intended the fee limitation to have this effect, the object being to prevent veterans' benefits from being diverted to attorneys.[2] Less clear is whether Congress intended to restrict the application of the fee limitation provision to this arena or to apply it as well where the Department of Veterans' Affairs (the "VA") pursues a claim or debt against a veteran. Precisely this question is presented here. Section 3404 of Title 38, United States Code, prior to its 1988 revision (the "Old Statute"), limits attorneys to a $10 fee for legal services rendered in connection with veterans' "claims for monetary benefits."[3] The revised Section 3404 (the "New Statute") prohibits any fee for legal services in connection with "a proceeding ... with respect to benefits" until the Board of Veterans Appeals ("BVA") makes a final decision on the matter. And, under both the Old and New Statutes, Section 3405 establishes criminal sanctions for violations of Section 3404's fee limitations. There is no dispute that both versions of Sections 3404 and 3405 apply where a veteran *1210 affirmatively seeks a VA benefit.[4] Disputed here, however, is whether either or both versions of the statute also apply where the VA pursues a claim against a veteran.

Background
Plaintiffs Richard Frye and Michael Bahnmiller are veterans subject to administrative debt collection proceedings initiated by the VA. The proceedings against Frye arose under the Old Statute, whereas the proceedings against Bahnmiller arose under the New Statute.[5] Under the VA's interpretations of both versions of the Act, neither plaintiff is permitted to pay an attorney for assistance in defending against the VA's administrative collection efforts, other than as provided in 38 U.S.C. § 3404. Plaintiffs dispute this interpretation and while they concede that the restrictions of Sections 3404 and 3405 apply to benefit claims proceedings[6], they assert the provisions are not applicable in the context of debt collection. An explanation of the VA's debt collection procedures under both the Old and New Statutes helps sharpen the focus on this dispute.

Debt Collection Proceedings

1. The Old Statute
In connection with its many benefits programs, the VA occasionally discovers that a benefits recipient has been overpaid, has received benefits to which the recipient is not entitled, or has otherwise incurred indebtedness to the government in connection with the receipt of benefits. The VA, by regulation, is then obligated to "take aggressive action ... on a timely basis with effective follow-up, to collect all claims for money or property arising from its activities". 38 C.F.R. § 1.910 (1987). Thus, the VA must promptly demand, in writing, payment of the alleged debt and notify the veteran of the veteran's rights and remedies in connection with the debt, as well as the consequences of a failure to cooperate with collection efforts. 38 C.F.R. § 1.911(b) (1987). After this point, the VA's debt collection proceedings can be divided into two distinct stages. The first stage ("Stage 1") includes all proceedings within the VA through the first administrative appeal. Hospitable and supportive treatment of veterans' claims and defenses is the significant and congressionally mandated hallmark of first stage proceedings. Second stage proceedings ("Stage 2"), namely all those following a veteran's unsuccessful administrative appeal, do not share this hallmark. During this stage, as is typical of litigants to any disputed claim, an adversarial relationship prevails between the VA and the veteran. A more detailed description of the two stages is helpful.
Stage 1 commences with notice to the veteran of the alleged debt. At this point, the veteran is entitled to (i) dispute the debt's existence or amount, (ii) request a waiver of the collection of the debt, (iii) have a hearing on the waiver request, and (iv) appeal the VA's decision underlying the debt through the VA administrative process. 38 C.F.R. § 1.911(c) (1987). Importantly, the statutory scheme contemplates that throughout this stage, the VA will "fully and sympathetically develop the veteran's claim to its optimum before deciding it on the merits." H.R.Rep. No. 100-963, 100th Cong., 2d. Sess. 13, reprinted in 1988 U.S.Code Cong. & Admin. News 5782, 5795. To this end, the VA provides the veteran with specially trained personnel to assist in the preparation and submission of claims (38 C.F.R. § 3.103(a) (1984)), affords the veteran a hearing on any issue involved in a claim, at any time (38 C.F.R. § 3.103(c) (1984)) and directs that all reasonable *1211 doubts with respect to a claim must be resolved in favor of the veteran (38 C.F.R. § 3.102 (1984)). The veteran is also afforded appellate rights to the BVA upon receipt of any initial adverse ruling. 38 C.F.R. § 1.911a(c)(3), 38 C.F.R. § 19.129 (1987).
If the BVA denies the appeal, Stage 2 commences. Now the VA may offset the debt against other benefits the veteran is receiving, 38 C.F.R. § 1.912(a) (1987), or, if the veteran is receiving no other benefits, the VA may initiate collection proceedings. Such proceedings may include reporting the debt to credit reporting agencies, 31 U.S.C. § 3711(f)(1), 38 C.F.R. § 1.980 (1987), attaching the veteran's federal tax refund, 26 U.S.C. § 6402(d), 26 C.F.R. § 301.6402-6T (1987), garnishing up to fifteen percent (15%) of a veteran's salary if the veteran is a federal employee, 5 U.S.C. § 5514, 38 C.F.R. § 1.980, or causing the Justice Department to institute judicial proceedings against the veteran for repayment, 31 U.S.C. § 3711, 38 C.F.R. § 1.950. If the VA seeks to offset the debt against other benefits the veteran is entitled to receive, the VA is required to provide the veteran with notice and additional hearing rights with regard to the proposed offset. 38 C.F.R. § 1.912. In an offset hearing, however, the veteran is not accorded the same favorable evidentiary presumption and treatment that prevail in Stage 1. Indeed, the contrary is true. Since the veteran has already been afforded an adjudication of the issue, complete with appeal rights, the hearing administrator in an offset hearing is directed to uphold the VA's findings unless determined to be erroneous by a preponderance of the evidence. 38 C.F.R. § 1.987. The administrator's written decision in the matter is then final. 38 C.F.R. § 1.991(b). Under the Old Statute, final agency decisions rendered by the BVA or other hearing administrator are presumptively outside the scope of judicial review. 38 U.S.C. § 211(a) ("[T]he decisions of the Administrator on any question of law or fact under benefits for veterans ... shall be final and conclusive and no ... court of the United States shall have power or jurisdiction to review any such decision."); see also Johnson v. Robison, 415 U.S. 361, 94 S.Ct. 1160, 39 L.Ed.2d 389 (1974).

2. The New Statute
Debt collection procedures under the New Statute are essentially the same as those under the Old with two major exceptions. First, effective June 1, 1989, a newly created Court of Veterans' Appeals (the "CVA"), is given exclusive jurisdiction to review and affirm, modify, reverse or remand decisions by the BVA. 38 U.S.C. § 4052.[7] Therefore under the New Statute, even after the BVA makes a final decision, the veteran may pursue an appeal to the CVA. 38 U.S.C. § 4066.
Second, under the New Statute, all decisions by the CVA concerning legal issues are subject to judicial review by the Court of Appeals for the Federal Circuit in conformity with 5 U.S.C. § 553, the judicial review provision of the Administrative Procedure Act. 38 U.S.C. § 223.

Proceedings to Date
In the instant case, plaintiffs' claims arise out of debt collection proceedings instituted under both the Old and New Statutes. By letter dated November 1, 1985, plaintiff Frye received notice of an alleged indebtedness of $7,209.67. This alleged debt pertained to a home loan foreclosure on the purchaser to whom Frye sold his home. On November 21, Frye wrote the VA requesting a release of liability or, in the alternative, a waiver of payment. The VA denied Frye's request and thereafter, on March 24, 1986, Frye filed a notice of disagreement with the VA. Because this filing occurred prior to the passage of the Veterans' Judicial Review Act, Frye's case is governed by the Old Statute.
Plaintiff Bahnmiller received his notice of an alleged debt of $27,658.83 by letter dated March 28, 1988. This, he claims, was the first notice of the debt. The letter warned that the Department of Navy, Bahnmiller's employer, would immediately *1212 begin garnishing fifteen percent (15%) of his active duty pay until the debt was paid. He requested a hearing to dispute the existence of the debt or, alternatively, to request its waiver. June 16, 1988, the VA notified Bahnmiller that his "request for waiver" was pending before the VA. Given this time frame, Bahnmiller is subject to the attorneys' fee limitations of the New Statute.
Both Frye and Bahnmiller contacted a number of attorneys to obtain legal advice and representation in defending against the VA's collection actions. These efforts failed. All of the attorneys contacted declined to represent plaintiffs as a result of the VA's position that the Old and New Statutes strictly limit, or altogether preclude, the payment of attorneys' fees in such circumstances. Plaintiffs contend, therefore, that the VA's construction of the Old and New Statutes erroneously prevents the plaintiffs from obtaining legal representation in the VA's collection actions against them.
On June 15, 1988, former plaintiff, James M. Sullivan and the Vietnam Veterans of America, Inc. ("VVA") filed this suit seeking declaratory and injunctive relief against the VA Administrator ("Administrator"), the VA, and the United States.[8] Specifically, plaintiffs sought a declaratory order barring the government from applying the attorneys' fee restrictions in 38 U.S.C. § 3404 to administrative debt collection proceedings instituted by the VA against plaintiffs. On August 26, 1988, plaintiffs moved for summary judgment. On October 4, 1988, the government responded with its motion to dismiss or, in the alternative, for summary judgment.
Before the Court ruled on these motions, two intervening events occurred: First, on November 18, 1988, the Veterans' Judicial Review Act (the "Act"), Pub.L. No. 100-687 was signed into law, amending the statutory provisions at issue in plaintiffs' suit. Second, on December 15, 1988, the VA formally released plaintiff Sullivan from all liability for his alleged debt, acknowledging that the government's claim against him was without legal merit. Given these events, the Court granted plaintiffs leave to amend their complaint to substitute two new plaintiffs. On January 17, 1989, plaintiffs' motion to amend was granted and Michael P. Bahnmiller and Richard W. Frye were substituted as new plaintiffs.
Following these substitutions, the Court denied plaintiffs' motion for summary judgment and the government's motion to dismiss without prejudice because the motions and supporting memoranda did not address the parties' positions with respect to the substituted plaintiffs. The parties were given leave, however, to submit appropriate motions on behalf of the new plaintiffs. Thereafter, plaintiffs renewed their motion for summary judgment, and the government followed suit with a cross-motion for summary judgment. During oral argument on these motions the government raised an issue of statutory interpretation concerning Section 3405 not previously briefed or argued. The Court took the cross-motions under advisement and granted the parties leave to submit additional memoranda addressing the statutory construction of Section 3405. Both parties filed supplemental memoranda. The Court has now reviewed all the memoranda submitted and, as there are no disputed material facts, this matter is now ripe for summary judgment.

Analysis

The Old Statute

1. Section 3404
Prior to enactment of the Veterans' Judicial Review Act of 1988, Section 3404 read in pertinent part:
38 U.S.C. § 3404
(c) The Administrator shall determine and pay fees to agents or attorneys recognized under this section in allowed claims for monetary benefits under laws *1213 administered by the Veterans' Administration. Such fees 
(2) shall not exceed $10 with respect to any one claim;
Pub.L. 85-857, Sept. 2, 1958, 72 Stat. 1238.
The parties agree that under this version of the Act, a veteran may not pay an attorney in excess of $10 per claim for services rendered in connection with a claim for monetary benefits in the context of applications for benefits before the VA. Thus, the fee limitation applies to proceedings related to the request for benefits unless the dispute has moved beyond the administrative regime into an Article III court, at which time the fee limitation, by its terms, does not apply. The question before the Court, however, is whether debt collection proceedings initiated by the VA for the recoupment of benefits fall within the $10 attorneys' fee limitation. This is a question of statutory interpretation.
Statutory analysis appropriately begins with the plain language used by Congress. Howe v. Smith, 452 U.S. 473, 101 S.Ct. 2468, 69 L.Ed.2d 171 (1981); Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723, 756, 95 S.Ct. 1917, 1935, 44 L.Ed.2d 539 (1975) (Powell, J., concurring). At issue here is the phrase "claims for monetary benefits." The key terms are "claims" and "benefits". Where Congress does not define a specific term, it may be presumed that the drafters intended the term to express the ordinary meaning of the word. Russello v. United States, 464 U.S. 16, 21, 104 S.Ct. 296, 299, 78 L.Ed.2d 17 (1983). It is therefore appropriate to resort to dictionary definitions in the search for the statute's plain meaning. See Addison v. Holly Hill Fruit Products, Inc., 322 U.S. 607, 617-18, 64 S.Ct. 1215, 1221, 88 L.Ed. 1488 (1944); United States v. Jackson, 759 F.2d 342 (4th Cir.), cert. denied, 474 U.S. 924, 106 S.Ct. 259, 88 L.Ed.2d 265 (1985). In Black's Law Dictionary, a "benefit" is defined simply as an "advantage", "profit", or "privilege." Black's Law Dictionary 200 (4th ed., 1951). The dictionary definition of a "claim" is defined as "a demand for something as one's rightful due" or "a basis for demanding title." Webster's II New Riverside Dictionary 267 (1984). Given these definitions, the plain meaning of the phrase "claims for monetary benefits" is broad enough to encompass both an advantage claimed, but not yet received, as well as one already received, but still disputed; i.e., a debt collection. Put in the context of the instant case, the plain meaning of the phrase easily encompasses both the effort to retain VA home loan benefits by resisting the VA's debt collection efforts, as well as the initial effort to obtain VA home loan benefits. But the plain meaning of the phrase is not, by itself, dispositive of the question presented. The plain meaning suggests, but does not compel, the conclusion that the Old Statute does not distinguish between claiming a VA benefit not yet received on the one hand, and retaining a benefit already received by defending against a VA debt collection action, on the other. In short, plain meaning analysis points in the direction of including debt collections within the Old Statute's fee limitation provision, but ultimately, some residual ambiguity remains.
Accepted canons of statutory construction instruct that courts may resolve statutory ambiguities by reference to a statute's purpose. United States v. Turkette, 452 U.S. 576, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981). This purpose can often be ascertained by examination of the statute's remaining provisions and legislative history. In this case, various other provisions of the Act evidence Congress' overarching intent to protect veterans, in all contexts, from having their benefits diverted to attorneys. For example, another portion of Section 3404 vests plenary power in the Administrator to recognize attorneys for the "preparation, presentation, and prosecution of claims" under the VA laws and to "suspend or exclude" attorneys guilty of various types of misconduct from practice before the VA. 38 U.S.C. § 3404(a), (b). See, Rodulfa v. United States, 295 F.Supp. 28 (D.D.C.1969), appeal dismissed, 461 F.Supp. 1240, cert. denied 409 U.S. 949, 93 S.Ct. 270, 34 L.Ed.2d 220 (1972) (purpose of statute prohibiting fees in cases involving veterans' benefits is to prevent unscrupulous *1214 persons from receiving undeserved fees). Significantly, this lawyer quality control provision is not limited to the VA's benefits claims arena; it applies equally to debt collection proceedings in the VA. This application reflects that the purpose of protecting veterans extends in principle to debt collections as much as to benefits claims. Veterans need protection from unscrupulous attorneys in the debt collection arena no less than in the benefits claims context. Similarly, subsection 3404(c)(1) provides that the permissible $10 attorneys' fee may be paid only with the approval of the Administrator, thereby ensuring that the attorney has properly represented the veteran and earned the fee. The provision does not specify that its application is limited only to particular VA proceedings; the requirement reaches all VA proceedings involving attorneys' fees, including debt collections. Thus, these provisions confirm that Congress' overriding purpose was to protect veterans in all VA proceedings, not just those in which a benefit is sought. Nothing suggests that Congress intended a distinction between debt collection and benefits application proceedings in its endeavor to protect veterans from burdensome legal fees or unscrupulous attorneys.
The legislative history of the attorneys' fees provision similarly reflects a pervasive intent to protect veterans in all proceedings, not just those related to requests for benefits. One proponent of the earliest predecessor to the current legislation[9] stated that the statute was designed to "prevent the numerous frauds committed by pension agents upon applicants for pensions, and to limit ... their compensation to a fair remuneration for services actually rendered." Cong. Globe, 37th Cong., 2d. Sess. 2101 (1862) (remarks of Mr. Harrison). Courts since then have consistently recognized and been guided by this purpose in deciding cases arising out of a veterans's pursuit for benefits. Hines v. Lowrey, 305 U.S. 85, 59 S.Ct. 31, 83 L.Ed. 56 (1938) (statute was intended to protect veterans against the imposition of fees greater than those in the statute); Staub v. Johnson, 519 F.2d 298 (D.C.1975) (statute was intended to protect veterans from predatory fee practices by attorneys); Hoffmaster v. Veterans' Administration, 444 F.2d 192 (3d Cir.1971) (statute was intended to protect just claimants from improvident bargains with attorneys); Smith v. United States, 83 F.2d 631 (8th Cir.1936) (statute was intended to protect veterans from extortionate fees); Owen v. Galt, 57 Ga.App. 259, 195 S.E. 233 (1938) (same). More recently, the Supreme Court affirmed the vitality of the original congressional purpose. "There can be little doubt that invalidation of the fee limitation would seriously frustrate the oft-repeated congressional purpose for enacting it. Attorneys would be freely employable by claimants to veterans' benefits, and the claimant would as a result end up paying part of the award, or its equivalent, to any attorney." Walters, 473 U.S. at 323, 105 S.Ct. at 3190. Significantly, in none of the foregoing decisions cited has a court intimated that Congress' purpose of protecting veterans was meant to be less than comprehensive or in anyway limited.
Legislative history reveals that in furtherance of the legislative purpose, Congress designed the VA's process to be informal and non-adversarial.[10] "A necessary concomitant of Congress' desire that a veteran not need a representative to assist him in making his claim was that the system should be as informal and non-adversarial as possible." Walters, 473 U.S. at 323, 105 S.Ct. at 3190. Nowhere in the legislative history is there any suggestion that this favorable climate for veterans' *1215 claims in Stage 1 does not extend to debt collection matters. Nothing in the history supports creating a statutory distinction between claims initiated by veterans and claims by the VA. Indeed, there is no reason in principle why the concept of a non-adversarial administrative process favorable to veterans should not apply both to claims for benefits not yet received and claims to retain benefits already received, but still disputed.[11]
The New Statute's legislative history also sheds some light on the meaning of the Old Statute. This history states that the fee limitation provisions under the Old and New Statutes, are "applicable to all proceeding [sic] affecting claims for veterans benefits." H.R.Rep. No. 100-963, 100th Cong., 2d. Sess. 28, reprinted in 1988 U.S.Code Cong. & Admin.News 5782, 5810 (emphasis added). Although plaintiffs may argue that a debt collection proceeding is not a "claim" for a benefit, they cannot deny that it "affects" claims for benefits and as such, is subject to the fee limitation provision. Further confirmation of this appears in the New Statute's legislative history reflecting the drafters' intent to eliminate any ambiguity concerning the application of the fee limitation to all VA proceedings. In this portion of the history, the drafters acknowledge an ambiguity in the Old Statute, evidence their intent to eliminate it and importantly, express the view that resolving the ambiguity in favor of limiting the application of the fee limitation provision is a misconstruction of the Old Statute. Thus, the House Report states:
[T]he CVA would have exclusive jurisdiction to consider all questions involving benefits under laws administered by the VA. This language is drawn from existing law, but is slightly broader in that it does not limit the CVA's authority to matters involving "claims". The purpose of the elimination of the phrase "on claims" is to avoid any possibility that courts will misconstrue the CVA's authority, as was done ... and limit its exclusive jurisdiction to matters related to "claims" for benefits.

H.R.Rep. No. 100-963, 100th Cong., 2d. Sess. 29, reprinted in 1988 U.S.Code Cong. & Admin.News 5782, 5811 (citations omitted) (emphasis added). In the New Statute, therefore, Congress intended to clarify the scope of the fee limitation provision, not broaden it. In other words, the scope of the fee limitation provisions in the Old and New Statutes are congruent; both extend to all VA proceedings; and any attempt to construe an ambiguity in the Old Statute to limit the scope of that provision is to misconstrue it.
The analysis thus far discloses that the Old Statute's plain meaning, its history, structure and purpose and the clarifying history of the New Statute all point persuasively, if not conclusively, to the conclusion that the fee limitation provision applies with equal force to claims for benefits not yet received and to claims for benefits already received but still disputed, i.e., debt collection proceedings.
The next step in the analysis is to consider the pertinent VA regulations. Ordinarily, reasonable regulations promulgated by an administrative agency responsible for interpreting or administering a statute are generally entitled to considerable weight in construing the statute. United States v. Riverside Bayview Homes, 474 U.S. 121, 106 S.Ct. 455, 88 L.Ed.2d 419 (1985). But more specifically, an agency's interpretation of the statutes that it administers is only accorded weight when, in addition to being reasonable, it demonstrates a consistent, long standing policy. Natural Resources Defense Council v. United States Envtl. Protection Agency, 683 F.2d 752 (3d Cir.1982) (inconsistent action divests the agency of the deference to which its interpretations are normally entitled), *1216 Wilson v. Lyng, 856 F.2d 630 (4th Cir.1988). In this instance, however, the VA's vacillation on this issue deprives the regulations of much, if not all, the weight they would otherwise deserve. But even so, it is not insignificant to note, as hereafter set forth, that the regulations are fully consistent with the conclusion that the Old Statute's fee limitation provision applies to debt collections as well as to applications for benefits.
According to the VA's regulations "claims" include: "applications made under Title 38, United States Code, and implementing directives, for entitlement to Veterans' Administration benefits, reinstatement, continuation or increase of benefits, or the defense of a proposed agency adverse action concerning benefits." 38 C.F.R. § 14.627(d) (1984) (emphasis supplied). The regulations pertaining specifically to debt collection also provide that "the terms `claims' and `debt' are synonymous and interchangeable." 38 C.F.R. § 1.907(a). Nowhere do the regulations distinguish between benefits application and debt collection for purposes of defining "claims" or "benefits". The VA's regulations are therefore consistent with the conclusion that the phrase "claims for monetary benefits" in the Old Statute includes debt collections. And they would be strong support for this conclusion were it not for the fact that the VA, at one time, expressed the opposite view in its Benefits Manual. Department of Veterans' Benefits, Veterans' Administration, Department of Veterans Benefits Manual M21-1  Adjudication Procedure, February 20, 1976 (the "Manual").
For a twelve year period, beginning in 1976, the Manual expressly exempted debt collection proceedings from the limitations on attorneys fees. Department of Veterans' Benefits, Veterans' Administration, Department of Veterans Benefits Manual M21-1  Adjudication Procedure, February 20, 1976. During a portion of this period, the VA issued other memoranda which, in conflict with the Manual, expressly applied the fee limitations to debt collection proceedings. Finally, in February, 1988 the VA removed the exemption from the Manual, thus reconciling the disparity between the regulations and the memoranda, on one hand, and the Manual on the other. This eliminated the confusion surrounding the conflicting statements. Given the VA's prior inconsistency on this issue, it would be inappropriate to accord either position the substantial weight usually accorded an agency's interpretation of its own statute. In any event, the Old Statute's plain meaning, its structure, purpose and history amply establish that the fee limitation provision extends to debt collection proceedings. This application, however, is not without limitation. Once the VA abandons its administrative avenues and seeks relief in the courts, through garnishment or otherwise, the fee limitation no longer applies. Both the language and the purpose of the fee limitation provision compel this conclusion. By its terms, the fee limitation only applies to fees paid to "agents or attorneys recognized under [Section 3404]." 38 U.S.C. § 3404(c). Agents or attorneys recognized under Section 3404 are those individuals whom the Administrator permits to practice before the VA. 38 U.S.C. § 3404(a), (b). Accordingly, if the attorney is not practicing before the VA, the Administrator has no control over the fees that the attorney receives or the veteran pays. Thus, the fee limitation does not apply when the VA seeks legal remedies beyond the administrative context. This conclusion is compatible with the purpose of the statute. The statutory regime for the resolution of benefits claims is designed to be a sympathetic one, biased in favor of the veteran. As noted earlier, the veteran is provided with ample resources to press a benefits claim and all reasonable doubts are resolved in favor of the veteran, thus obviating the need for costly attorney involvement in the process. But, the tenor of the proceedings changes when the government invokes the judicial process to prosecute a debt collection proceeding against a veteran outside the VA. In a court of law, a veteran defending against a VA debt collection is not afforded any legal assistance, nor are all reasonable doubts resolved in the veteran's favor. *1217 Outside of the VA, the veteran is judged on the objective merits of the veteran's position and to develop and present that position, the veteran needs qualified legal assistance. The District Court for the District of Columbia noted precisely this point in a case in which the veteran was in fact the plaintiff, rather than the defendant, in an extra-administrative action for benefits. That court noted,
"Here, however, we have a lawsuit.... Such actions cannot be instituted or maintained without the services of a lawyer.... We must realize that unless we permit counsel fees, many veterans will be unable to secure counsel to bring such actions, because obviously there is no reason why counsel should work gratuitously."
Rodulfa v. United States, 295 F.Supp. 28, 29-30 (D.D.C.1969) (emphasis supplied) (interpreting 38 U.S.C. § 3405). If this interpretation of the statute is correct for plaintiffs who initiate benefits actions, it is a fortiori true for defendants in collection actions who are forced to participate in court proceedings. Thus, while the attorneys' fee limitation applies to plaintiff Frye in all proceedings before the VA, if the debt collection proceedings go beyond Stage 1 in the VA, the limitation is inapplicable.

2. Section 3405
Section 3405, the companion section to Section 3404, establishes the criminal penalties for violations of the attorneys' fee limitation. In pertinent part, it provides,
38 U.S.C. § 3405
Whoever (1) directly or indirectly solicits, contracts for, charges, or receives, or attempts to solicit, contract for, charge, or receive, any fee or compensation except as provided in sections 3404 or 784 of this title, or (2) wrongfully withholds from any claimant or beneficiary any part of a benefit or claim allowed and due him, shall be fined not more than $500 or imprisoned at hard labor for not more than two years, or both.
Pub.L. 85-857, Sept. 2, 1958, 72 Stat. 1239. Frye argues that because Section 3405 is a penal statute, ambiguities must be construed strictly against finding criminal liability. See Giaccio v. Pennsylvania, 382 U.S. 399, 86 S.Ct. 518, 15 L.Ed.2d 447 (1966); United States v. Harriss, 347 U.S. 612, 617, 74 S.Ct. 808, 811, 98 L.Ed. 989 (1954); Lanzetta v. New Jersey, 306 U.S. 451, 453, 59 S.Ct. 618, 619, 83 L.Ed. 888 (1939); Connally v. General Const. Co., 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926); United States v. Cassiagnol, 420 F.2d 868 (4th Cir.1970); Jones v. Peyton, 411 F.2d 857 (4th Cir.1969); United States v. Boyette, 299 F.2d 92 (4th Cir. 1962). Frye therefore concludes that, "given that the language of 38 U.S.C. §§ 3404, 3405 fails even to suggest application of the fee limits to debt collection proceedings, the defendant's position [that the criminal sanctions of Section 3405 apply to debt collection proceedings] is erroneous as a matter of law." Plaintiffs' Brief at 35 (Oct. 19, 1988); See also, Plaintiffs' Brief at 39 (Feb. 10, 1989). This argument fails. Whatever validity this position may have in the abstract, it does not, in this context, overcome the combined weight of the plain meaning of the Old Statute's words, its purpose, structure and history, all of which point convincingly to the conclusion that Section 3405 applies to fees for services rendered in connection with Stage 1 debt collection proceedings.

The New Statute

1. Section 3404
The Veterans' Judicial Review Act of 1988, inter alia, amended the attorneys' fee limitation in Section 3404(c). The New provision, effective September 1, 1989, replaces Old Statute's Section 3404(c) and states:
38 U.S.C. § 3404
(c)(1) In connection with a proceeding before the Veterans' Administration with respect to benefits under laws administered by the Veterans' Administration, a fee may not be charged, allowed, or paid for services of agents or attorneys with respect to services provided before the date on which the Board of Veterans' Appeals first makes a final decision in the case. Such a fee may be charged, *1218 allowed, or paid in the case of services provided after such date only if an agent or attorney is retained with respect to such case before the end of the one-year period beginning on that date. The limitation in the preceding sentence does not apply to services provided with respect to proceedings before a court.
Pub.L. 100-687, Div. A, Title I, § 104(a), Title IV, § 401(a), Nov. 18 1988, 102 Stat. 4108, 4122, effective Sept. 1, 1989. The New Statute's applicability to VA debt collection proceedings is even more apparent and less subject to doubt than the Old Statute's. To begin with, absent from the New Statute is the old Statute's ambiguous phrase "claims for benefits." Instead, the New Statute applies to "all proceedings with respect to benefits." As the term "benefits" plainly includes Bahnmiller's original VA loan, it necessarily follows that debt collection proceedings with respect to the loan are proceedings "with respect to benefits."
Legislative history confirms this conclusion. The House Report on the New Statute records that

[A]ll representation in matters before the [VA] would have to be undertaken without the payment of any fee whatsoever ... prior to the time that the Administrator issues a statement of the case ...
. . . . .
[O]nce the VA issues a statement of the case, a claimant and a lawyer are free to negotiate whatever fee they choose.
Id., 1988 U.S.Code Cong. & Admin.News at 5810  11 (emphasis added). A plainer expression of intent is difficult to imagine. It makes pellucidly clear that the fee preclusion provision applies to "all representation in matters before the VA" through Stage 1.[12] Thereafter, veterans are free to retain and compensate a lawyer. So construed and applied, the New Statute does not represent a sharp departure from the Old. Rather, it is more accurately characterized as a clarification. Only two changes are effected by the New Statute, neither of which affects the results reached here. First, instead of the Old Statute's $10 limit, the New Statute precludes attorneys' fees altogether prior to the BVA's final decision, i.e., in Stage 1. Second, the New Statute creates the CVA to review appeals from final BVA decisions and specifically provides for the payment of reasonable attorneys' fees in connection with services rendered after a final BVA decision. As noted, these changes do not affect the Court's conclusion that the protection afforded veterans through the fee limitation provisions in the Old and New Statutes extends to Stage 1 debt collection activities. It follows, therefore, that Bahnmiller is not entitled to pay a fee to a lawyer in connection with a VA debt collection proceeding until after he receives a final BVA decision.

2. Section 3405
The amendment to Section 3405 is not significant to the resolution of the instant case. The amendment merely reduces the crime from a felony to a misdemeanor. It substitutes "shall be fined as provided in title 18, or imprisoned not more than one year, or both" for "shall be fined not more than $500 or imprisoned at hard labor for not more than two years, or both." Pub.L. 100-687, Div. A, Title I, § 104(b), Title IV, § 401(a), Nov. 18, 1988, 102 Stat. 4109, 4122. There was no change in the language regarding the penalty's application. Therefore, the New Statute's Section 3405 is also applicable to the fee limitations under the New Statute's Section 3404 for the same reasons as discussed supra, at 21-22.

Conclusion
For the reasons stated here, the Court concludes that the fee limitation provisions in the Old and New Statutes apply to debt collection proceedings in Stage 1 of the VA process. Beyond Stage 1, and once the proceedings are taken to court, the fee limitations cease to apply. Thus, once the BVA renders a final decision under the New and Old Statutes, veterans may retain and pay an attorney a reasonable fee for services rendered. This result is fair and *1219 sensible. The statutory regime protects the veterans' interests both in Stage 1 and Stage 2, differing only in its methodology for doing so. In Stage 1, the benevolent administrative scheme and the absence of burdensome legal fees protect the veterans. In Stage 2, the VA in effect "takes off the gloves," and hence it is appropriate that veterans be permitted to employ lawyers at this point. Significantly, at neither stage of the process are the veterans left unaided in their pursuit or defense of benefits.
As neither of the instant plaintiffs have as yet received a final decision from the BVA[13], they may not pay an attorney in contravention of the terms of the applicable version of 38 U.S.C. § 3404.[14] Accordingly, plaintiffs' motion for summary judgment is denied and defendants' motion for summary judgment is granted.
NOTES
[1] The original limitation established a $5 ceiling on fees to attorneys who executed veterans' pension claims. 12 Stat. 566, 568 (1862).
[2] Perhaps Congress in setting this goal was moved by Voltaire's observation that he suffered ruination only twice in life: once when he lost a lawsuit and once again when he won one.
[3] The use of the present tense is appropriate because the Old Statute is still applicable to claims in which a notice of disagreement was filed before November 18, 1988.
[4] The constitutionality of the Act in the benefit claims context was upheld in Walters v. National Ass'n of Radiation Survivors, 473 U.S. 305, 105 S.Ct. 3180, 87 L.Ed.2d 220 (1985).
[5] The amended statute was enacted on November 18, 1988 with a general effective date of September 1, 1989. Exceptions to this date are the attorney's fees provisions, Sections 3404, 3405; they became immediately effective on the date of enactment and thus apply to all cases in which a notice of disagreement was filed on or after midnight on November 18, 1988.
[6] For a complete description of the benefits application process, see Walters, 473 U.S. 305, 105 S.Ct. 3180, 87 L.Ed.2d 220 (1985).
[7] Only decisions applying the schedule for rating disabilities under 38 U.S.C. § 355 are excepted from this broad grant of jurisdiction. 38 U.S.C. § 4052(b).
[8] On July 3, 1989, the parties entered into a stipulation replacing the original defendants with Edwin J. Derwinski, Secretary of Veterans' Affairs, the U.S. Department of Veterans' Affairs and the United States.
[9] The earliest codification was a statute that provided that "the fees of agents and attorneys for making out and causing to be executed the papers necessary to establish a claim for a pension, bounty and other allowance before the Pension Office ... shall not exceed five dollars." 12 Stat. 566, 568 (1862).
[10] The Supreme Court in Walters flatly rejected any contention that the VA process, despite its design, was adversarial in fact. The Court stated that "anecdotal evidence [regarding contentiousness] is simply not the sort of evidence that will permit a conclusion that the entire system is operated contrary to its governing regulations." Walters, 473 U.S. at 324, n. 11, 105 S.Ct. at 3190, n. 11.
[11] Plaintiffs attempt to distinguish debt collections proceedings from benefits claims on the ground that debt collections are "inherently adversarial." Plaintiffs do not explain, however, how debt collections are any more adversarial than applications for benefits; in both processes the goal is to effect a correct disbursement of benefits. One process differs from the other only in whether the veteran has already received the disputed benefit. This is a distinction without a difference in substance.
[12] The New Statute's fee limitation provision, like the one in the Old Statute, applies only to "proceedings before the Veterans' Administration." 38 U.S.C. § 3404 (1988).
[13] The record is unclear as to the nature and extent of Stage 1 treatment, if any, that has been accorded plaintiffs in this case. Disposition of the legal issues in this case, however, does not require an inquiry into whether the VA adhered to its Stage 1 procedures in this instance.
[14] The Court expresses no opinion as to whether a third party, in behalf of a veteran, may pay an attorney without regard to the fee limitations in either version of Section 3404. This issue was not before the Court. However, it should be noted that in a Memorandum Opinion issued by the VA's General Counsel's Office on May 5, 1986, the VA, confronted with the question of whether an Oregon state fund established for the payment of veterans' attorneys' fees violated the statute, concluded that Sections 3404 and 3405 did "not bar payment of attorneys' fees by a third party on behalf of the beneficiary or claimant." General Counsel Memorandum, Scope of Statutory Limitation on Attorneys' Fees in Claims Involving Benefits Administered by the Veterans' Administration, at 4 (May 5, 1986).