**Michael T. BAHNMILLER; Richard W. Frye; the Vietnam Veterans of America, Inc., Plaintiffs–Appellants,**

**v.**

**Edwin J. DERWINSKI, Secretary of the Department of Veterans Affairs; U.S. Department of Veterans Affairs; United States of America, Defendants–Appellees.**

**No. 90–1712.**

United States Court of Appeals, Fourth Circuit.

Argued July 18, 1990.

Decided Jan. 10, 1991.

Bruce Sutherland Deming, Van Ness, Feldman & Curtis, P.C., Washington, D.C., argued (Barton F. Stichman, National Veterans Legal Services Project, Washington, D.C., and Richard Crouch, Arlington, Va., of counsel), for plaintiffs-appellants.

John Samuel Koppel, Civ.Div., U.S. Dept. of Justice, Washington, D.C., argued (Stuart M. Gerson, Asst. Atty. Gen., William Kanter, Civ. Div., U.S. Dept. of Justice, Washington, D.C., Henry E. Hudson, U.S. Atty., Alexandria, Va., Michael A. Leonard, Office of General Counsel, Dept. of Veterans Affairs, Washington, D.C., of counsel), for defendants-appellees.

Before CHAPMAN and WILKINSON, Circuit Judges, and JOE F. ANDERSON, Jr., District Judge for the District of South Carolina, sitting by designation.

JOE F. ANDERSON, Jr., District Judge:

Two veterans and a veterans' organization brought this action seeking a determination as to whether the attorneys' fee limitations of the present and former versions of 38 U.S.C.A. §§ 3404 and 3405 apply to administrative debt collection proceedings by the Department of Veterans Affairs ("DVA").[1] The district court held that the statutes' restrictions do apply in such proceedings and granted the DVA's motion for summary judgment. *Bahnmiller v. Derwinski*, 724 F.Supp. 1208 (E.D. Va.1989). Changes made subsequent to the decision of the district court have accorded the plaintiffs much of the relief they seek in this action. As to that part of the controversy which has become moot, we vacate the decision below and dismiss the appeal. As to that part which remains in controversy, we affirm.

## I.

This case has a somewhat complex procedural history. The action was initiated by former plaintiff James M. Sullivan and the associational plaintiff, Vietnam Veterans of America ("VVA"), in June 1988. Before the matter could be heard, two events occurred which necessitated a rebriefing of the issues and a substitution of plaintiffs. First, on November 18, 1988, Congress enacted the Veterans Judicial Review Act ("VJRA"), Pub.L. No. 100–687, 102 Stat. 4105 (1988), which amended sections 3404 and 3405, the statutory provisions in dispute in this litigation. Second, Sullivan's claim became moot when the DVA decided not to proceed with the collection action against him. The district court permitted the VVA to substitute as new co-plaintiffs the present appellants, Bahnmiller and Frye, who respectively sought to challenge the present and former versions of the statute. Thereafter, the court granted defendants' motion for summary judgment and held that both the old and new versions of the fee statute apply to DVA debt collec-

tion proceedings. 724 F.Supp. at 1218. After the district court rendered its decision, the DVA's Office of General Counsel issued O.G.C. Precedent 19–89, in an effort to "clarify and implement" the current fee statutes. As will be seen, the General Counsel went beyond the scope of the district court decision, and endeavored to provide additional guidance in the area of the home loan guarantee program. This additional guidance establishes significant exceptions to the DVA's prior policy on attorneys' fees restrictions in debt collection cases.

## II.

### A. *Statutory and Regulatory Framework*

The statutes at issue here govern representation of veterans before the DVA. The statute in effect prior to November 1988 ("the old statute") provides in relevant part that fees may be paid to attorneys "in allowed claims for monetary benefits under the laws administered by the [DVA]" but that such fees "shall not exceed $10 with respect to any one claim." 38 U.S.C.A. § 3404(c) (West Supp.1987). Related provisions in section 3405 impose criminal sanctions upon persons who pay or receive attorneys' fees in excess of the $10 limit. Passage of the VJRA significantly amended and repealed portions of 38 U.S. C.A. §§ 101 *et seq.* The VJRA ("the new statute") made significant changes to section 3404, by providing that *no* attorneys' fees may be paid in "proceedings . . . with respect to benefits under laws administered by the [DVA]." Significantly, this new statute does not prevent the employment of an attorney, subject to certain exceptions not applicable here, for representation in administrative or judicial proceedings that follow an initial final decision by the Board of Veterans Appeals ("BVA"). Amended section 3405 is essentially the same, although the new version designates a violation of the statute as a misdemeanor rather than a felony.

---

1. The Veterans Administration became the Department of Veterans Affairs effective March 15, 1989, pursuant to Pub.L. No. 100–527, 102 Stat.

2635 (1988). For ease of reference, the agency will be referred to throughout this opinion as the Department of Veterans Affairs ("DVA").

The regulations implementing the new statute are found at 38 C.F.R. §§ 14.626 *et seq.* Section 14.627 defines a "claim" as any "application ... for entitlement to [DVA] benefits, reinstatement, continuation, or increase in benefits, *or the defense of a proposed agency adverse action concerning benefits.*" 38 C.F.R. § 14.627(f) (emphasis added).

Veterans charged with owing money to the DVA are permitted to dispute the amount or existence of the debt. 38 C.F.R. § 1.911(c). Additionally, they are entitled to argue that collection of the debt would be against equity and good conscience and may request a waiver of the debt before a DVA Regional Committee on Waivers and Compromises ("Regional Committee"). 38 C.F.R. §§ 1.911(c), 1.955, 1.962–1.964 (1988). If a veteran's defenses are rejected by the Regional Committee, he or she may appeal the matter to the BVA within one year. 38 C.F.R. §§ 1.911(c)(3), 19.129.

The DVA's position on the statutes in dispute has taken many turns in recent decades. In 1976, the agency expressly exempted debt collection proceedings from the attorneys' fee restriction. *Department of Veterans' Benefits Manual M21–1—Adjudication Procedure,* February 20, 1976. In 1986, the DVA removed the portion of the benefits manual that exempted debt collection actions from the fee limitation. Between 1976 and 1986, the DVA took positions inconsistent with the position announced in its own manual. *See* Veterans' Administration Op. G.C. 11–86.[2] Finally, as noted earlier, the DVA again reversed its position, in part, on December 12, 1989, after the decision below was announced. *See* O.G.C. Prec. 19–89.

## B. *Debt Collection Activities of the DVA*

The DVA dispenses various benefits to veterans and their dependents. Included among these are disability compensation for service connected injuries, pensions for non-service related injuries, education benefits, home loan guarantees, and medical

and other services. Both the old and new versions of sections 3404 and 3405 are clearly applicable to claims for these benefits. The constitutionality of the fee statutes, as applied to these types of claims, was upheld in *Walters v. National Ass'n of Radiation Survivors,* 473 U.S. 305, 105 S.Ct. 3180, 87 L.Ed.2d 220 (1985).

Occasionally, the DVA determines that a veteran has incurred indebtedness to the government in connection with his or her receipt of veterans' benefits. Frequently, such an indebtedness arises in connection with the DVA's home loan guaranty program. Other situations, such as an overpayment of benefits, or the erroneous payment of benefits to one who is not entitled to them, may also result in a claim by the DVA, against the veteran, for reimbursement.

The DVA's claims against Bahnmiller and Frye arose in the home loan guaranty context. In 1985, the DVA initiated administrative debt collection proceedings against Frye, seeking to recover $7,209.67 allegedly due by reason of a deficiency judgment obtained in connection with a home formerly owned by Frye. Frye had obtained a DVA guaranteed loan on his home and sold the home to a third party. When the purchaser subsequently defaulted, the lienholder foreclosed upon the mortgage, and a deficiency judgment arose when the sale of the home did not bring enough to satisfy the mortgage indebtedness. Because Frye had not been released from the mortgage when he sold the home, the DVA was entitled to, and did, seek to collect the deficiency judgment from him. Frye requested a release from liability or a waiver of payment. Frye's administrative claim is still pending before the DVA, and is governed by the old statute.

In 1988, Bahnmiller received notice of an alleged debt of $27,658.83, also arising out of a DVA home loan guarantee. He too challenged the existence of the debt and alternately requested its waiver. Bahnmiller's administrative claim is still pending

---

**2.** DVA General Counsel Opinions issued prior to March 1989 are not binding authority but mere legal advice. Opinions designated as Precedent Opinions issued after March 1989 are binding authority.

before the DVA and is governed by the new statute.

Both Frye and Bahnmiller alleged in their complaint that they were unable to obtain representation in connection with the defense of the claim made against them. Frye asserts that the $10 limit of the old statute effectively prevented any attorney from taking the case. Bahnmiller complains because the plain language of the new statute prohibited the use of any attorney while the claim was still at the administrative level. Frye and Bahnmiller thus challenge the applicability of the fee statutes to debt collection efforts arising out the home loan guaranty program.

The parties cross-moved for summary judgment. In a thorough and well-reasoned opinion, the district court, concluding that the fee statutes do apply to administrative debt collection actions through what it termed "Stage One" of the DVA debt collection process, granted defendants' motion for summary judgment. The court further held that the fee limitation does *not* apply "when the [DVA] seeks legal remedies beyond the administrative context." 724 F.Supp. at 1216.

In the opinion of the district court, a Stage One proceeding, which is characterized by a "benevolent administrative scheme," does not involve an adversarial relationship between the veteran and the agency. This stage includes all administrative proceedings up to and including a decision by the BVA. Once the BVA renders a decision, under both the old and new statutes, "Stage Two" proceedings begin, and the veteran may retain and pay an attorney a reasonable fee for services rendered. In Stage Two, the DVA, in the words of the district court, "takes off the gloves" and attorney participation is appropriate and authorized for these proceedings.

One month after the district court opinion, and while this appeal was pending, the DVA General Counsel issued O.G.C. Precedent 19–89, purporting to "clarify" its 1986 opinion in light of the "guidance" provided by the district court opinion in this case. Far from clarifying the DVA position, however, the policy announced in O.G.C. Precedent 19–89 undermines the bright line two-step analysis employed by the district court and calls into question the standing of Frye and Bahnmiller to challenge the statutes at issue in this case. The precedent adopts the finding of the court that the 1988 VJRA amendments to the fee statutes do not change the statutes' applicability to debt collection proceedings. It also adopts, in principle, the court's two-step analysis of the applicability of the fee statutes to debt collection proceedings. The precedent goes on to apply the analysis to debt collection actions involving home loan guarantees. When a veteran challenges the existence or amount of a home loan guarantee debt, no Stage One proceeding is available. Instead, the veteran goes directly to Stage Two and may immediately employ an attorney.

The rationale behind the DVA's position is that when the DVA makes a claim against the veteran based upon a contractual agreement, an adversarial relationship between the DVA and the veteran exists from the start. A "benevolent administrative scheme," including appeal to the BVA, is not appropriate. Accordingly, these proceedings are Stage Two proceedings from the outset. The two-step analysis remains applicable, however, in home loan guaranty cases when the veteran seeks a *waiver* of the indebtedness and in all debt collection actions for other veterans programs, such as compensation, pension, and education programs.

As applied to Bahnmiller and Frye, the DVA's change in position means that they may both employ attorneys for all aspects of their respective disputes with the DVA except for their requests for administrative waiver. The DVA's post judgment concession of a large part of the relief sought by individual appellants Frye and Bahnmiller renders this controversy moot in part. To remain a justiciable controversy, a suit "must remain alive throughout the course of litigation, to the moment of final appellate disposition." 13A C. Wright, A. Miller, and E. Cooper, *Federal Practice and Procedure* § 3533 at 211 (2d ed. 1984). Although neither party

in the case before us raises the mootness issue, the court is obligated to raise it because it implicates the court's jurisdiction. *S-1 v. Spangler*, 832 F.2d 294, 297 (4th Cir.1987).

Withdrawal or alteration of administrative policies can moot an attack on those policies. *See, e.g., Alabama Hosp. Ass'n v. Beasley*, 702 F.2d 955, 961 (11th Cir.1983); *Relf v. Weinberger*, 565 F.2d 722 (D.C.Cir. 1977); *Utz v. Cullinane*, 520 F.2d 467, 474 n. 9 (D.C.Cir.1975). Here, events have simply overtaken the pace of this litigation. Because Bahnmiller and Frye are now free to employ attorneys for all aspects of their disputes except their waiver requests the case is moot except as to the waiver question. In such a situation, the proper course of action is to dismiss the appeal in part, vacate the judgment below as to the part of the case which is moot, and decide the remaining live issues on appeal. *See CIA v. Holy Spirit Ass'n of the Unification of World Christianity*, 455 U.S. 997, 102 S.Ct. 1626, 71 L.Ed.2d 858 (1982).

### III.

■ We now turn to that portion of the appeal which remains a justiciable controversy—whether veterans in home loan guaranty situations [3] may employ an attorney in connection with their efforts to obtain a waiver of their indebtedness.[4] The district court concluded that the use of the phrase "claim for monetary benefits" in the old statute was broad enough to in-

clude "both an advantage claimed, but not yet received, as well as one already received, but still disputed; *i.e.*, a debt collection." 724 F.Supp. at 1213. With regard to the more expansive language of the new statute, the district court had little trouble concluding that DVA debt collection proceedings are proceedings "with respect to benefits."

We agree with the determination of the district court that both the old and new statutes apply to limit the participation of attorneys in DVA debt collection proceedings, in the home loan guaranty context, when the veteran seeks a waiver of the indebtedness. Such an interpretation is consistent with both the plain language and the legislative history of the statutes in question.

In matters of statutory construction, "[i]f the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Chevron, U.S.A. v. National Resources Defense Council, Inc.*, 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984). We agree with the district court that the phrase "claim for monetary benefits" in the old statute and the phrase "proceedings ... with respect to benefits" of the new statute are broad enough to cover debt collection actions where a waiver is requested. Moreover, the legislative history of the new statute demonstrates that one reason for the inclu-

---

**3.** We do not address the question of whether the fee limitation statutes apply in DVA debt collection actions other than the home loan guaranty program. The record before us is insufficient to evaluate this question. Neither Frye nor Bahnmiller has standing to raise the question in anything other than the home loan guaranty context. The associational plaintiff, VVA, would have standing to bring suit on behalf of its members only if: (1) its members would otherwise have standing to sue in their own right; (2) the interests it seeks to protect are germane to the organization's purpose; and (3) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit. *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977). Each of the three *Hunt* requirements must be met by a litigant asserting associational standing. *Associated*

*Gen. Contractors v. Otter Tail Power Co.*, 611 F.2d 684 (8th Cir.1979). Here there was no showing with respect to the second prong of the *Hunt* test. The record is devoid of any evidence that the subject of debt collection actions by the DVA in non-home loan guaranty cases is germane to the purposes for which the VVA was organized. There was no inquiry below into the purpose of the organization. Indeed, the district court opinion can be read as dealing with the home loan context only. *See* 724 F.Supp. at 1209.

**4.** Because the case comes before us for review of an order granting summary judgment to defendants, and denying summary judgment to plaintiffs, the standard of review is *de novo*. *Higgins v. E.I. Du Pont de Nemours & Co.*, 863 F.2d 1162, 1167 (4th Cir.1988).

sion of the broader language of the new statute was to "avoid any possibility that courts will misconstrue the CVA's authority . . . and limit its exclusive jurisdiction to matters related to 'claims' for benefits." H.R.Rep. No. 963, 100th Cong., 2d Sess. 29, *reprinted in* 1988 U.S.Code Cong. & Admin.News 5782, 5811.

Even if the pertinent language of the statutes at issue were unclear, we must uphold the agency's interpretation of the statute as long as it is "rational and consistent with the statute." *National Rifle Ass'n v. Brady*, 914 F.2d 475, 483 (4th Cir.1990) (quoting *NLRB v. United Food & Commercial Workers*, 484 U.S. 112, 123, 108 S.Ct. 413, 421, 98 L.Ed.2d 429 (1987)). In short, even if one were to conclude that the key phrases of the statutes are "undefined and ambiguous," we find that the Secretary has interpreted these phrases "in a reasonable manner." *National Rifle Ass'n*, 914 F.2d at 480.

The pertinent DVA regulations governing waivers in the home loan guaranty context reinforce the conclusion of the district court. Waiver requests are processed in an informal, non-adversary proceeding. Waiver is appropriate when collection of the indebtedness would be against "equity and good conscience." 38 C.F.R. § 1.964(a)(2). "Reasonableness and moderation" are the overriding considerations when considering a waiver request. 38 C.F.R. § 1.965(a). There is no time limit for filing an application for waiver. 38 C.F.R. § 1.964(e). Among the factors to be

considered in deciding a waiver request is whether collection of the debt "would deprive [the] debtor or [his] family of basic necessities." 38 C.F.R. § 1.965(a)(3). The informal and non-adversarial nature of the DVA procedures was a factor in the Supreme Court's *Walters* decision, 473 U.S. 305, 105 S.Ct. 3180, upholding the fee limitation statutes against a due process challenge. We agree with the district court that, at least insofar as waiver requests are concerned,[5] the "benevolent administrative scheme" provided in the regulations supports the conclusion that attorney involvement is not permitted by the statute.

Appellants have advanced many policy arguments favoring the involvement of an attorney in all DVA debt collection proceedings, including waiver requests. Such policy arguments are more appropriately addressed to those who write the laws, rather than those who interpret them.[6] *E.g., Wilson v. Lyng*, 856 F.2d 630, 636 (4th Cir. 1988) ("The courts which administer our system of law are not always at liberty to pursue their own ideals of justice.").

In sum, the language of the statutes in question, their legislative history, the applicable regulations, and the structure of the debt collection process itself all point to the conclusion that the attorney fee limitations of sections 3404 and 3405 apply in home loan guaranty programs when the veteran seeks a waiver of the indebtedness.

## IV.

For the foregoing reasons, we dismiss the appeal and vacate the judgment below

---

**5.** We note that the district court incorrectly relied upon certain regulations—which are intended to apply only to the DVA *claims* process, not the defense of debt collection actions—as support for the proposition that debt collection actions are "benevolent" in nature. Specifically, the district court noted that: (1) the DVA is required to provide the veteran with specially trained personnel to "assist in the preparation and submission of claims," 724 F.Supp. at 1210 (citing 38 C.F.R. § 3.103(a) (1984)) and (2) "all reasonable doubts with respect to a claim must be resolved in favor of the veteran." *Id.* at 1210–11 (citing 38 C.F.R. § 3.102 (1984)). Those regulations apply to DVA *claims* procedures only. A separate set of regulations, 38 C.F.R. Part 1.9, applies to debt collection actions. Despite the district court's misplaced reliance on sections 3.102 and 3.103, its ultimate

conclusion—that the process is specifically intended to be non-adversarial—remains sound.

**6.** We note that a bill to overrule the DVA's application of the fee limitation provisions to debt collection was recently introduced in the Senate. S. 2615 (1990); *see* 136 Cong.Rec. S6075–78 (daily ed. May 11, 1990) (remarks of Senator Cranston, for himself and Senator Rockefeller). Additionally, unsuccessful efforts were made to reverse the DVA's position on the fee limitation statute when the VJRA was passed. *See Judicial Review Legislation: Hearing on S. 11 and S. 2292 Before the Senate Committee on Veterans' Affairs*, 100th Cong., 2d Sess. 244 (1988) (statement of Richard E. O'Dell, President, and Paul S. Egan, Legislative Director of VVA).

insofar as it applies to the right of Frye and Bahnmiller to employ an attorney to challenge the existence or amount of their respective indebtedness to the DVA. We affirm so much of the judgment below as determined that both the old and new versions of sections 3404 and 3405 apply to the efforts of Frye and Bahnmiller to obtain an attorney to seek administrative waiver of their respective indebtedness.

AFFIRMED IN PART, DISMISSED AND VACATED IN PART.