**Richard H. SCHAPER, Appellant,**

v.

**Edward J. DERWINSKI, Secretary of Veterans Affairs, Appellee.**

**No. 90–463.**

United States Court of Veterans Appeals.

Argued March 22, 1991.

Decided Aug. 26, 1991.

Timothy C. Terrill, for appellant.

Stephen A. Bergquist, with whom Raoul L. Carroll, Gen. Counsel, Barry M. Tapp, Asst. Gen. Counsel, and Andrew J. Mullen, Deputy Asst. Gen. Counsel, were on the brief, for appellee.

Before HOLDAWAY, IVERS and STEINBERG, Associate Judges.

STEINBERG, Associate Judge:

This case presents a challenge to the validity of a debt asserted against the appellant by the Department of Veterans Affairs (VA) arising out of a VA home loan guaranty on a property that the appellant had sold to third parties who then defaulted on the assumed loan. We hold that the Board of Veterans' Appeals (BVA or Board) was required to, and failed to, make a determination on the validity of the asserted debt. Hence, we vacate the BVA's decision and remand for that purpose. We hold, alternatively, that the question of the validity of the asserted debt, when challenged, is an issue that must be determined by the BVA in deciding on a waiver-of-indebtedness application and hence vacate and remand for readjudication the BVA decision on this ground as well. On appellant's challenge to the BVA's decision denying him a retroactive release of the asserted liability on the defaulted loan, in the

event that the validity of the asserted debt is ultimately sustained, we also remand for readjudication and application of the correct statutory standard and a reasoned decision as to retroactive release of liability.

## I. BACKGROUND

On June 23, 1983, the appellant, veteran Richard H. Schaper, purchased a home for $112,000. The home was financed by a $111,500 loan, which was guaranteed by the Veterans' Administration (now the Department of Veterans Affairs) (VA), from Liberty Mortgage Company. On that day, the loan was assigned to GMAC Mortgage Company of Iowa (GMAC). The appellant sold the property on July 31, 1986, to Glendon and Charlotte Thomas for $112,080.18. After a limited credit check which verified employment and contained no derogatory information, the Thomases were deemed creditworthy by GMAC, and the parties to the sale agreed that the sale of the property was to include an assumption of the GMAC note by the Thomases. An assumption transfer fee was paid to GMAC on the appellant's behalf by his attorney, and GMAC completed a Change of Ownership form. When the warranty deed was "executed and recorded ..., GMAC ... considered [the] assumption to be completed." R. at 110.

However, the Thomases never made any payments to GMAC against the loan. After monthly payments due August 1, September 1, and October 1, 1986, were missed and not thereafter cured, GMAC notified the VA on November 10, 1986, that "no payments [have been] received since the titleholders [the Thomases] assumed this loan." R. at 13. The VA did not notify Schaper of the nonpayments until November 20, 1986, at which point it informed him that the loan was in default. On March 17, 1987, the mortgage holder, GMAC, filed for foreclosure against the property in the District Court of the State of Oklahoma. The appellant appeared through his attorney; the Thomases failed to answer or otherwise plead. On September 8, 1987, judgment was entered by that court for GMAC. Two months later, a foreclosure sale was held,

and the property was conveyed to GMAC for $101,830. R. at 51.

After the foreclosure sale, GMAC, under the VA guaranty, demanded a deficiency of $27,675 from the VA. R. at 62, 90. (The deficiency was calculated, under the applicable law and regulation, 38 U.S.C. § 1803 (1988), 38 C.F.R. §§ 36.4284, 36.4513 (1990).) The VA paid the deficiency judgment and on July 8, 1988, sought indemnification from Schaper for that amount. On December 18, 1988, Schaper denied any liability for this debt and requested either a waiver or a release. The VA Regional Office (RO) Committee on Waivers and Compromises denied Schaper's request on January 20, 1989. R. at 81. In response to his Notice of Disagreement filed with the Board on March 7, 1989, the BVA issued a February 16, 1990, decision that affirmed the RO's denial of release and waiver. *Richard H. Schaper,* BVA 90–05067 (Feb. 16, 1990). It is from this decision that appellant appeals to this Court pursuant to 38 U.S.C. §§ 7252(a) (formerly § 4052) and 7266 (formerly § 4066).

## II. CONTENTIONS

The appellant argues that the debt which VA is seeking to collect from him is unlawful. He contends that, in violation of 12 Okla.Stat.Ann. § 686, he was not informed of the motion for a deficiency judgment within 90 days and that, since the foreclosure proceedings violated Oklahoma law, the deficiency was not preserved. As a result, he argues, GMAC was not entitled to collect a deficiency judgment, the VA paid the deficiency in error, and the appellant is not required to indemnify VA. The appellant cites *International Paper Co. v. Whitson,* 595 F.2d 559 (10th Cir.1979); *United States v. Vallejo,* 660 F.Supp. 535 (W.D.Wash.1987); and *United States v. Whitney,* 602 F.Supp. 722 (W.D.N.Y.1985).

The appellant also argues that notice was inadequate under federal law. "In the event of default in the payment of any loan guaranteed under this chapter, the holder of the obligation shall notify the Secretary of such default." 38 U.S.C. § 1832(a)(1) (1988), formerly 38 U.S.C. § 1816 (1982).

According to VA regulations, when an account is 60 days past due, the holder is required to notify the Secretary within 45 days. 38 C.F.R. § 36.4315(a)(1), (b)(3) (1990). The appellant argues that "GMAC ... did not notify the Secretary in a timely manner, and such failure was prejudicial to Schaper.... Due to the noncompliance of [sic] the notice provision by the holder of indebtedness, the Secretary was relieved of his liability to GMAC, and thus may not recover from Schaper under either a subrogation or indemnity theory." Br. of Appellant at 10–11.

In addition, the appellant asserts that he is entitled to retroactive release of liability under VA law and regulations since if he had applied for release at the time of the sale to the Thomases he would have received it. *See* 38 U.S.C. § 1813(b) (1988); 38 C.F.R. § 36.4323(g) (1990).

The Secretary insists that under the authority of 38 U.S.C. § 210, VA was granted "the rights of indemnity and subrogation when it has been required to pay a lender's claim under a loan guaranty." Br. of Appellee at 5. In support of this assertion, VA argues that an assumption did not occur under the law, 38 U.S.C. § 1813(b) (1988), because the Thomases did not personally assume the obligation to indemnify VA for any deficiency arising from a mortgage-loan foreclosure. VA contends that this is not a debt collection but rather a "waiver-request denial" and that since the veteran's contentions that the indebtedness to VA was created invalidly "were never developed for appellate review by either the Waiver Committee or BVA" they are not "subject to review by this Court." *Id.* at 21.

With respect to retroactive release, the Secretary asserts that "[38 U.S.C. §] 1814(a)(1)(B)(ii) ... requires as a precondition for a veteran's applied-for release from loan-guaranty liability, that his proposed transferee meets the extensive underwriting criteria set out in section 1810(g) for a veteran applying for a VA loan guaranty." Br. of Appellee at 19. VA also claims that this "fortifies the requirement that a veteran seeking retroactive VA approval of re-lease of his repayment obligation under section 1813(b) demonstrate that the transferee was a good credit risk". *Ibid.* The Secretary contends that the transferee was not creditworthy because there is nothing in the record to establish creditworthiness and at most the record fails to include any derogatory information. VA asserts that it would be "inherently unfair to impose on VA the onus of disproving that the transferee was not credit-worthy" and that VA should not be required to presume that each transferee is an acceptable credit risk. Br. of Appellee at 18.

As to waiver, the Secretary argues that repayment of the deficiency would not cause Schaper undue hardship and that the BVA thus did not err in finding that the appellant is not entitled to a waiver of the indebtedness.

## III. ANALYSIS

### A. Validity of the Debt

Throughout the debt collection and related proceedings, the appellant has consistently challenged the validity of the debt which the Department sought to enforce against him—in his August 3, 1988, letter in response to the VA Regional Office's July 8, 1988, claim of indebtedness, R. at 63–64; at the November 29, 1988, hearing before the VARO Committee on Waivers and Compromises, R. at 74 (making the August 3 letter a part of that hearing record); in the veteran's February 21, 1989, Notice of Disagreement (R. at 83); and in his May 15, 1989, appeal to the BVA (R. at 94–95). Neither the VARO nor the BVA made a decision on the appellant's various challenges to the validity of the asserted debt.

In *Smith v. Derwinski*, 1 Vt.App. 267 (1991), decided after oral argument was held in the instant case, this court concluded that VA's adjudication process permitted a challenge to VA's conclusion that a debt exists and that this Court has jurisdiction to review the BVA's decision as to the validity of the asserted debt. *Smith*, at 272–73. The Court stated:

By regulation, the VA has established a mechanism which permits an alleged debtor to dispute the VA's conclusion that a debt actually exists. *See* 38 C.F.R. §§ 1.900–1.994 (1990); *Bahnmiller v. Derwinski*, 923 F.2d 1085, 1087 (4th Cir.1991). Once the VA has determined that there is a debt, the debtor must be advised of the fact of the debt *and* that he or she has the right to "informally dispute the existence or amount of the debt" as well as the right "to request waiver of the collection of the debt." 38 C.F.R. § 1.911(c). "These rights can be exercised separately or simultaneously." *Id.* If the alleged debtor elects to informally dispute the existence of the debt, he or she need only write to the VA, which will "as expeditiously as possible, review the accuracy of the debt determination." 38 C.F.R. § 1.911(c)(1). If the decision is adverse to the debtor, he or she "may appeal in accordance with Part 19 of [title 38 of the Code of Federal Regulations] the decision underlying the debt." 38 C.F.R. § 1.911(c)(3). Part 19 of title 38 of the Code of Federal Regulations, consists of the regulations dealing with appeals of decisions regarding veterans benefits to the Board.

Under 38 U.S.C. § [7104 (formerly § 4004)], the BVA has the jurisdiction, and the obligation, to review on appeal decisions made by the Secretary with respect to benefits. "All questions in a matter which under section 211(a) of this title is subject to decision by the [Secretary] shall be subject to one review on appeal to the [Secretary]. Final decisions on such appeals shall be made by the Board." 38 U.S.C. [§ 7104(a)]. In reviewing a benefits decision, the Board must consider the entire record, all of the evidence, and all of the applicable laws and regulations. *Id.*

*Smith*, at 272–73. The appellant having disputed VA's conclusion that a debt existed and VA and BVA having failed to dispose of that challenge, our holding in *Smith* requires that the matter be remanded to the BVA for it to carry out its "obligation" to make such a decision. That decision, if adverse to the appellant, would then be reviewable here.

**B. Retroactive Release of Liability**

For purposes of reviewing the BVA's determination not to grant a retroactive release of liability, we assume that the debt was valid, which is the issue to be resolved by the BVA on remand as discussed in part A, above.

Under 38 U.S.C. § 1813(b) (1988), VA may, as a matter of discretion, grant a retroactive release of liability on its guaranty to a veteran who disposes of the property securing a VA-guaranteed loan and who fails to secure a release of such liability from VA at the time of the sale. The law provides:

(b) If any veteran disposes of residential property securing a guaranteed, insured, or direct housing loan obtained by the veteran under this chapter without receiving a release from liability with respect to such loan under subsection (a), and a default subsequently occurs which results in liability of the veteran to the Secretary on account of the loan, the Secretary may relieve the veteran of such liability if the Secretary determines, after such investigation as the Secretary deems appropriate, that the property was disposed of by the veteran in such a manner, and subject to such conditions, **that the Secretary would have issued the veteran a release from liability under subsection (a) with respect to the loan if the veteran had made application therefor incident to such disposal.** Failure of the transferee to assume by contract all of the liabilities of the original veteran-borrower shall bar such release of liability only in cases in which no acceptable transferee, either immediate or remote, is legally liable to the Secretary for the indebtedness of the original veteran-borrower arising from termination of the loan. The failure of a veteran to qualify for release from liability under this subsection does not preclude relief from being granted under [section] [5302(b) (formerly § 3102)] of this title, if eligible thereunder.

38 U.S.C. § 1813(b) (1988) (emphasis added). VA's regulation provides that the Secretary may grant a retroactive release of the veteran's liability if the Secretary determines that:

> (1) A transferee either immediate or remote is legally liable to the Secretary for the debt of the original veteran-borrower established after the termination of the loan, and
>
> (2) The original loan was current at the time such transferee acquired the property, and
>
> (3) The transferee who is liable to the Secretary is found to have been a satisfactory credit risk at the time [the transferee] acquired the property.

38 C.F.R. § 36.4323(g) (1990).

In applying these provisions in the instant case, the BVA stated:

> [I]t is clearly not appropriate to release the veteran under the provisions of 38 U.S.C. 1813(b), formerly 38 U.S.C. 1817. A veteran may be relieved of liability after a default if the loan was current at the time of transfer, and if the transferee was credit-worthy and fully obligated to the Department of Veterans Affairs. In this case, however, it is not shown that there was any assumption of liability by the transferee. **Apart from this, the transferee cannot be deemed credit-worthy, having defaulted from the very outset.**

*Schaper*, BVA 90–05067, at 7 (emphasis added). The last-quoted sentence above constitutes a clear misapplication of the law by the BVA. The law very clearly establishes the standard for retroactive release as being whether "the [Secretary] **would have issued the veteran a release** from liability under subsection (a) with respect to the loan **if the veteran had made application therefor incident to such disposal.**" 38 U.S.C. § 1813(b) (1988) (emphasis added); *see also* 38 C.F.R. § 36.4323(g) (1990) (quoted above). The law and regulations require the Secretary to look back and make a hypothetical decision as to what decision he would have made on a release-of-liability request made contemporaneous with the transfer. Hence, the

BVA's reliance on the transferee's subsequent default (even though "from the very outset") could not be a factor taken into account prior to the transfer. *See Travelstead v. Derwinski*, 1 Vet.App. 344, 348 (1991).

■ However, it appears that the law and regulation establish three criteria all of which must be met in order to qualify for a retroactive release—namely, at the time of transfer, there must have been (1) a legally liable transferee, (2) currency of loan payments, and (3) a creditworthy transferee. Thus, an error by the Secretary in applying one of the criteria might not be prejudicial error if either or both of the other criteria were clearly not satisfied as a matter of law.

■ Here, there appears to be no dispute that the veteran's payments on the loan were current at the time of transfer, but there is considerable dispute about whether there was a transferee "legally liable to the Secretary for the indebtedness of the original veteran borrower" under 38 U.S.C. § 1813(b) (1988). The BVA stated in that connection: "In this case, however, it is not shown that there was any assumption of liability by the transferee." *Schaper*, BVA 90–05067, at 7. Given the contentions by the appellant that an assumption had indeed taken place and that the lender, GMAC, considered that to be the case, Br. at 12, the BVA's single sentence pertaining to this criterion is neither sufficient on its face as a determination that legal liability had not been established nor adequate in response to the requirement of 38 U.S.C. § 7104(d)(2) (formerly § 4104) that BVA decisions must include "a statement ... of reasons or bases for [the Board's] findings and conclusions, on all material issues of fact of law presented on the record." *See Gilbert v. Derwinski*, 1 Vt.App. 49, 56–57 (1990).

Accordingly, the question of retroactive release must be remanded as well in order for the BVA, if it determines that the debt is valid, as discussed in part A, above, to readjudicate the application for a retroactive release of liability by applying the correct statutory standard to the facts of this

case to determine whether a release of liability would have been granted under 38 U.S.C. § 1813(a) had the appellant applied for one at the time of the transfer of the property to the Thomases. Our remand also encompasses the need for a clear and reasoned determination by the BVA with respect to the issue of the Thomases' legal liability to the Secretary at the time of transfer.

### C. Waiver of Debt

In the event that retroactive release were to be denied, the appellant also sought a waiver of some or all of the debt under 38 U.S.C. § 3102(b) (now 38 U.S.C. § 5302(b)) and 38 C.F.R. § 1.964(a) (1990). Section 3102(b) and (c) provided at the time of the application for, and RO denial of, a waiver and until the enactment of section 311 of Pub.L. No. 101–237, 103 Stat. 2062, 2076, on December 18, 1989, as follows:

> (b) With respect to any loan guaranteed, insured, or made under chapter 37 of this title, the [Secretary] may waive payment of an indebtedness to the [Department of Veterans Affairs] by the veteran (as defined in sections 101 and 1801), or his spouse, following default and loss of the property, where the Administrator determines that collection of such indebtedness would be against equity and good conscience.

> (c) The [Secretary] may not exercise his authority under subsection (a) or (b) of this section to waive recovery of any payment or the collection of any indebtedness (or any interest thereon) if, in [the Secretary's] opinion, there exists in connection with the claim for such waiver an indication of fraud, misrepresentation, material fault, or lack of good faith on the part of the person or persons having an interest in obtaining a waiver of such recovery or the collection of such indebtedness (or any interest thereon).

38 U.S.C. § 3102(b), (c) (1988). (The changes made by Public Law 101–237 are not pertinent to the issues raised in this case, except that waiver under subsection (b) was made mandatory when the collection would be "against equity and good conscience.")

Under VA regulations, the statutory phrase "equity and good conscience" is defined as follows:

> The phrase "equity and good conscience" means arriving at a fair decision between the obligor and the Government. In making this determination consideration will be given to the following elements, which are not intended to be all inclusive:
>
> (1) *Fault of debtor....*
> (2) *Balancing of faults....*
> (3) *Undue hardship....*
> (4) *Defeat the purpose....*
> (5) *Unjust enrichment....*
> (6) *Changing position to one's detriment....*

38 C.F.R. § 1.965 (1990). In *Smith,* we held:

> Waiver decisions, and the review of such decisions by the BVA, are subject to review by this Court to determine whether the statutory standard was applied in accordance with the regulatory guidance or whether the decision was made in an arbitrary or capricious manner. 38 U.S.C. § 4061(a)(3)(A) (1988); *see Service v. Dulles,* 354 U.S. 363 [77 S.Ct. 1152, 1 L.Ed.2d 1403] (1957) (holding that a decision committed to the "absolute discretion" of an agency head is subject to judicial review when the agency has promulgated regulations governing the exercise of such discretion.)

> The scope of review under the "arbitrary and capricious" standard is narrow and a court is not to substitute its judgment for that of the agency. Nevertheless, the agency must examine the relevant data and articulate a satisfactory explanation for its action including a "rational connection between the facts found and the choice made."

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43 [103 S.Ct. 2856, 2866, 77 L.Ed.2d 443] (1983) (quoting *Burlington Truck Lines, Inc. v. United States,* 371 U.S. 156, 168 [83 S.Ct. 239, 245, 9 L.Ed.2d 207] (1962)).

*Smith,* 1 Vt.App. at 279.

■ In addition to the Court's rationale in *Smith* for the holding that the VA and

BVA adjudication processes include determinations of challenges to the validity of a home loan guaranty debt, we conclude that the making of such a determination is also implicit in making a determination on a waiver application under the standard whether "collection of such indebtedness would be against equity and good conscience." 38 U.S.C. § 5302(b) (formerly § 3102(b)). We cannot conceive of a situation more against equity and good conscience than for VA to attempt to collect an invalid debt. Hence, when a veteran raises the validity of the debt as part of a waiver application, we hold that it is arbitrary and capricious and an abuse of discretion to adjudicate the waiver application without first deciding the veteran's challenge to the lawfulness of the debt asserted against him or her. Accordingly, the BVA decision on waiver must be vacated as well since the issue raised by the appellant of the debt's validity was not decided by the BVA.

On the question of the application of the regulatory criteria to the appellant's request for a waiver, the BVA stated as follows:

> ... In this case, the evidence does not show that repayment of the debt would prevent the veteran from providing himself and his dependents with the basic necessities of life. While the veteran indicated in his financial status report that total monthly expenses exceeded total monthly net income, at the time of the more recent regional office hearing, he indicated that his wife had recently obtained a part-time job and the monthly net income now exceeded total monthly expenses, albeit by only about $50. Also, the veteran's Mercedes is for sale and when the car is sold, there will be additional funds with which to help pay the various loans. Further, we note that no amount is shown to be past due on any of the various debts reported. The veteran also has significant assets, some of which could be applied to his loan guaranty indebtedness.
>
> In view of the foregoing, we conclude that, with prudent budgeting and with payments in reasonable installments, recovery of the loan guaranty debt would not prevent the veteran from providing himself and those dependent upon him with the basic necessities of life. Undue hardship or other equitable factors warranting recovery of this debt are not shown.

*Schaper*, BVA 90–05067, at 7–8. Having vacated the BVA's decision on the waiver application because of the Board's failure to decide, in the waiver context, on the validity of the asserted debt, we do not decide the issue of whether the Board's reasoning set forth above is sufficient for us to find that it was neither arbitrary, capricious, nor an abuse of the Secretary's discretion to deny the appellant's request for a waiver on the particular facts of this case as analyzed above.

## IV. CONCLUSION

For the reasons set forth above, we hold that the Board was required to and failed to make a determination on the appellant's challenge to the validity of the asserted debt and vacate the Board's February 16, 1990, decision and remand the record for that purpose. We hold, alternatively, that the question of the validity of the asserted debt, which the appellant challenged from the outset and before the Board, must be determined as part of his application for a waiver of the debt. In the event that the appellant's asserted liability is sustained, we remand for readjudication, to include application of the correct statutory standard as to the transferee's creditworthiness, and a reasoned determination of the transferee's legal liability to the Secretary, at the time of the transfer. We retain jurisdiction since the appellant should not have to be burdened with "the requirement of a new notice of appeal or the fulfilling of other procedural steps ..." because if the Board decides against the appellant on remand, the "Court will not have spoken on the ultimate issue with respect to which the veteran sought judicial review, namely, his [indebtedness to VA]." Joint Response to Inquiry of the Court filed June 27, 1991, in *Green v. Derwinski*, 1 Vet.App. 490, in which the Court ordered the case "remanded pursuant to the terms of the joint mo-

tion for remand with the Court retaining jurisdiction" (Order of August 12, 1991). Also, the appellant has throughout the administrative process attempted to obtain a review of the validity of the asserted debt and, through no fault of his own, has been denied that review. The Secretary shall file with the Clerk and serve upon the appellant a copy of the Board's decision on remand. Within 14 days after such filing, the appellant shall notify the Clerk whether he desires to seek further review by the Court.

VACATED AND REMANDED.