**Neil R. CARLSON, Appellant,**

v.

**Edward J. DERWINSKI, Secretary of Veterans Affairs, Appellee.**

**No. 90–590.**

United States Court of Veterans Appeals.

Feb. 7, 1992.

Carl D. Comstock, San Antonio, Tex., for appellant.

Before STEINBERG, Associate Judge.

#### ORDER

In January 1982, appellant, while on active duty in the U.S. Army in Houston, Texas, bought a house for $64,625, of which approximately $27,500 was secured by a VA loan guaranty. R. at 12, 16, 14. In July 1984, the Army transferred appellant with 21 days notice (R. at 48) and he was forced to sell the house; the purchasers assumed his VA-guaranteed loan. R. at 17, 19, 22. Given the time constraints (R. at 49, 74, 87), appellant did not request a release of liability from the Veterans' Administration, now the Department of Veterans Affairs (VA), at that time (R. at 60), *see* 38 U.S.C. § 3713(a) (formerly § 1813); *cf.* R. at 41. He thus remained liable on the loan. The purchasers made

no payments on the assumed mortgage, although they may have received rental payments from tenants (R. at 49, 73) pursuant to an equity skimming scheme (R. at 75). The property in question may also have been part of a new homes development under investigation by VA's Inspector General in connection with overpricing. R. at 78.

In December 1984, the lender sent the VA Regional Office (RO) a notification of intention to foreclose. R. at 25. The lender next notified the RO that it had set a sale date for October 1985. R. at 26. In September 1985, the RO sent appellant a notice, dated September 5, 1985, of the default and the upcoming foreclosure sale. R. at 30. The notice was addressed to the address of the house which appellant had sold in 1984. According to appellant, he received this letter on approximately September 15, two weeks before the proposed foreclosure sale. Br. at 2; R. at 73.

At the October 1, 1985, foreclosure sale the sale proceeds of $57,960 were insufficient to cover the total of the principal indebtedness, accrued interest, and foreclosure expenses. R. at 34, 38. The RO thus reimbursed the lender for a deficiency of $17,212 and sought reimbursement from appellant under the guaranty. R. at 42. Appellant contends that he did not receive notice of this deficiency until October 1987. R. at 74. The record contains no notice contradicting this assertion. Upon being informed of the alleged indebtedness, appellant on November 2, 1987, applied to the RO's Committee on Waivers and Compromises for a waiver of indebtedness under 38 U.S.C. § 3102(c) (now § 5302). R. at 48. He challenged the validity of the asserted debt as well as seeking a waiver on equitable grounds. R. at 73, 80. In a June 6, 1988, decision the RO found that appellant was not "materially at fault in the creation of the debt", but it denied him a waiver because it found that the collection of the debt would not be against "equity and good conscience" under 38 C.F.R. § 1.964–65. R. at 59, 60. Specifically, the RO found, after reviewing appellant's monthly finances, that requiring repayment would

not create an "undue hardship" on him or his family. *Ibid.*

The record contains an undated application from appellant for retroactive release of liability (38 U.S.C. § 3713(b); 38 C.F.R. § 36.4323(g)). R. at 66, 41. Neither the RO nor the BVA apparently made any disposition of such an application.

At a personal hearing at the RO (R. at 72) in connection with appeal to the Board of Veterans' Appeals (BVA or Board), appellant requested that the asserted debt "be dismissed rather than waived" (R. at 80). On March 13, 1990, the Board affirmed the RO decision. Although appellant had contested the legitimacy of the asserted indebtedness, the BVA made no determination on that issue. The Board found: (1) "appellant had actual notice of the default prior to the foreclosure sale"; (2) "there was a two-month delay in the processing of the foreclosure and an expense of $6,500 was not realized"; (3) "the specified amount was reduced because of an estimate of projected VA expense for the acquisition, management and resale of the property.... VA did not acquire the property, [so] such estimated expense should be adjusted to reflect the actual expense"; (4) "due process was satisfied"; (5) repayment "of $7,980 of the indebtedness should not be insisted upon"; and (6) payment "of the remaining debt, $9,232.67, plus accrued interest, would not result in undue financial hardship or otherwise be inequitable." *Neil R. Carlson,* BVA 89–――, at 5–6 (Mar. 13, 1990).

On appeal to this Court, appellant, in briefs filed by his father-in-law, again challenges the validity of the asserted debt, contending that the RO, as well as the lender, failed to provide appellant adequate notice of the default and foreclosure sale, thus depriving him of the chance to refinance or otherwise cure the default, all this in violation of applicable law, regulation, and the due process clause of the Constitution. Br. at 6, 13. Alternatively, he argues that this notice was so inadequate that the BVA should have found that collection of the debt would be against equity and good conscience. The Secretary then

moved for remand and to stay further proceedings. In a very forthcoming pleading, the Secretary came very close to conceding the validity of many of appellant's arguments, pointing to seven specific respects in which the BVA decision failed to provide adequate "reasons or bases" under 38 U.S.C. § 7104(d)(1) for its decision: (1) failure to address appellant's assertions of inadequate notice; (2) failure to explain the basis for the conclusion that there was a two-month delay in the processing of the foreclosure and that this resulted in "an expense of $6,500 [which] was not realized"; (3) failure to explain how the $6,500 figure was derived; (4) failure to explain the basis for its conclusion that $7,989 of the debt should be waived, and how the $7,989 figure was derived; (5) failure to explain why the $7,989 was waived rather than being determined an invalid debt; (6) failure to explain how due process was satisfied; and (7) failure to address in its discussion the criteria governing whether or not collection of the "remaining" asserted debt would be "against equity and good conscience" under law and regulation.

Appellant filed a response in opposition to the Secretary's motion; opposition was based on the long delay which appellant had already encountered and the concessions in the Secretary's motion which caused appellant to "feel[ ] that there is reason to ask the Court for summary judgment in this matter". Response at 4.

■ The Court finds itself in substantial agreement with both parties. The Court is appreciative of the Secretary's candid motion. The Court also fully understands appellant's frustration over the time that has been consumed in this matter before VA and the Court. However, under this Court's precedents, the Court is unable, at this point, to grant appellant the relief he seeks and is constrained to remand the matter to the Board for readjudication. *See Schaper v. Derwinski*, 1 Vet.App. 430, 434 (1991) (citing *Smith v. Derwinski*, 1 Vet.App. 267, 272–73 (1991), for the proposition that "appellant having disputed VA's conclusion that a debt existed and VA and BVA having failed to dispose of that challenge, the holding in *Smith* requires that the matter be remanded to the BVA for it to carry out its 'obligation' to make such a decision. That decision, if adverse to the appellant, would then be reviewable here."). Appellant's due process arguments and assertions of invalid notice go to the validity of the asserted debt itself, as do his contentions about whether a portion of the asserted debt is invalid. These issues must be addressed by the Board in the first instance, before effective review can be carried out in this Court. *See Schaper; Smith.* The "reasons or bases" deficiencies so ably pointed out by both parties in the Board's decision must also be addressed by the Board in order to permit effective judicial review and to provide appellant an understanding of the rationale behind the Board's conclusions. *See Gilbert v. Derwinski*, 1 Vet.App. 49, 57 (1990).

As to appellant's apparently unresolved application for retroactive release, we said in *Schaper:* "The law and regulations require the Secretary to look back and make a hypothetical decision as to what decision he would have made on a release-of-liability request made contemporaneous with the transfer. Hence, the BVA's reliance on the transferee's subsequent default (even though 'from the very outset') could not be a factor taken into account prior to the transfer."

Appellant has requested "that he be granted reimbursement in the sum of $575.00 which he has been required to expend over a period of 66 months, loss of which he has suffered in defense of said illegal and inequitable claims". Br. at 13; *see also* Reply Br. at 3–4. If cognizable by this Court at all, this petition is cognizable under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(a), (b), (d) (1988). The question of the applicability of that Act, in whole or in part, to proceedings before the Court is pending here in *Jones/Karnas v. Derwinski*, 2 Vet.App. 7 in which oral argument was held before the Court en banc on January 15, 1992.

■ Finally, as to the brief and response of appellant filed by his father-in-law as "Attorney–in–Fact for Appellant", under

this Court's Rules of Practice and Procedure, the Court may accept representation in a particular case by a close relative of appellant. *See* U.S. Vet.App.R. 46(c) ("upon a showing of good cause, the Court may permit ... a non-attorney representative to appear ... for the purpose of a particular case"); *Mokal v. Derwinski*, 1 Vet.App. 12, 14 (1990); *Sagainza v. Derwinski*, 1 Vet.App. 575, 578 (1991).

On consideration of the foregoing, it is

ORDERED that the BVA's March 13, 1990, decision is VACATED, the Court retains jurisdiction, *see Schaper*, 1 Vet.App. at 437–38, and the record is REMANDED to the Board for readjudication and disposition in accordance with this order and the Secretary's motion. Questions regarding the adequacy of notice and the validity of the asserted debt shall be addressed by the Board under applicable Federal and state constitutional, statutory, and regulatory provisions, as appropriate. *See Schaper*, 1 Vet.App. at 433–34; *Smith*, 1 Vet.App. at 274–75. Appellant shall also be given an explicit opportunity to apply for retroactive release of liability under 38 U.S.C. § 3713(b) and 38 C.F.R. § 36.4323(g). *See Schaper*, 1 Vet.App. at 435. It is further

ORDERED that appellant's father-in-law, Carl D. Comstock, is permitted to represent appellant in this Court on this appeal under Rule 46(c). It is further

ORDERED that appellant's request for costs and expenses is deemed an application under the EAJA and is held in abeyance until further order of the Court. It is further

ORDERED that the Board shall complete its proceedings upon remand within 90 days after the date of this order. The Secretary shall file with the Clerk of the Court and serve upon appellant a copy of the Board's decision on remand. Within 14 days after such filing, appellant shall notify the Clerk whether he desires to seek further review by the Court.