**Jimmie Lee ELKINS, Appellant,**

v.

**Edward J. DERWINSKI, Secretary of Veterans Affairs, Appellee.**

**No. 90–158.**

United States Court of Veterans Appeals.

Submitted July 11, 1991.

Decided May 21, 1992.

Jimmie Lee Elkins, pro se.

Raoul L. Carroll, General Counsel, Barry M. Tapp, Asst. General Counsel, Pamela L. Wood, Deputy Asst. General Counsel, and John D. Lindsay, Jr., Washington, D.C., were on the brief, for appellee.

Before NEBEKER, Chief Judge, and FARLEY and IVERS, Associate Judges.

IVERS, Associate Judge:

Jimmie Lee Elkins appeals from an October 26, 1989, Board of Veterans' Appeals (BVA or Board) decision which denied him a waiver of recovery of loan guaranty indebtedness. In addition to the issue of a waiver, this case also presents an issue of release from liability about which the BVA was silent. The Court has jurisdiction of the case under 38 U.S.C. § 7252(a) (formerly § 4052(a)). *Smith v. Derwinski*, 1 Vet. App. 267, 269 (1991). The Court finds that the BVA failed to provide adequate reasons or bases under 38 U.S.C. § 7104(d)(1) (formerly 4004(d)(1)) for its denial of the waiver and that it should have considered Mr. Elkins' right to a release under 38 U.S.C. § 3713(b) (formerly § 1813(b)). Accordingly, we vacate the decision of the BVA and remand the case for readjudication of the denial of the appellant's request for a waiver of recovery and proper adjudication of his entitlement to a release from liability.

## FACTUAL BACKGROUND

In July 1983, appellant applied for and was granted a Veterans' Administration (now Department of Veterans Affairs) (VA) home loan guaranty for $35,250. In August of that year, Mr. Elkins and his wife, Judy V. Elkins, executed a mortgage deed in favor of STM Mortgage Company, and they also signed a VA document entitled "Report of Home Loan Processed on Automatic Basis" which contained the following language: "The fact that you dispose of your property after the loan has been made WILL NOT RELIEVE YOU OF LIABILITY FOR MAKING THESE PAYMENTS." R. at 17–19 (emphasis in original). The document also contained the following instruction:

[U]nless you are able to sell the property to a credit-worthy obligor who is accept-

able to the VA and who will assume the payment of your obligation to the lender and Veterans['] Administration, you will not be relieved from liability to repay any guaranty claim which the VA may be required to pay to your lender on account of default in your loan payments.

R. at 19.

In August 1985, the Elkins sold the home without obtaining a release from liability from the VA. R. at 31; *see* 38 C.F.R. § 36.4323(g) (1991) (providing that the Secretary of Veterans Affairs (Secretary) may relieve the veteran of liability if he determines that certain criteria have been met). In December 1985, the VA received notice that the subsequent purchasers had defaulted on the mortgage. R. at 21. In January 1986, Mr. Elkins discussed the situation with the VA and offered to repurchase the property if necessary to resolve the matter. R. at 22. In February 1986, the VA received a "Notice of the Intention to Foreclose" from Bright Mortgage Company, formerly STM Mortgage Company. R. at 23. In August of that year, Bright Mortgage Company filed a complaint in the Court of Common Pleas in Licking County, Ohio, naming Mr. and Mrs. Elkins, in addition to the defaulting purchasers, as defendants in the foreclosure action. R. at 26.

On November 26, 1986, a judgment was entered in the Court of Common Pleas in favor of Bright Mortgage Company. R. at 48–51. The Court held that unless the defendants, Mr. and Mrs. Elkins and the defaulting purchasers, paid the amount due on the mortgage to the mortgage company within three days of the judgment, the mortgage would be foreclosed and the premises sold. The Court also entered a judgment in favor of Mr. and Mrs. Elkins on a crossclaim that the Elkins had filed against the defaulting purchasers. The Court held that the Elkins were entitled to a default judgment and that the defaulting purchasers "shall indemnify and hold harmless Jimmy L. Elkins and Judy V. Elkins for the entire amount of Plaintiff's recovery, for which sum Judgment is hereby granted to Jimmy L. Elkins and Judy V. Elkins." R. at 48–50. Moreover, the Court found that the defaulting purchasers "assumed and agreed to pay said Mortgage Note" and that they "agreed to indemnify the Veterans' Administration to the extent of any claim arising from the failure to pay the said Mortgage Note." R. at 49–50.

Early in 1987, the foreclosure sale was held. The proceeds from the sale were insufficient to satisfy the outstanding balance due on the VA guaranteed loan, and the Government paid a deficiency claim. R. at 52–55. Subrogated to the rights of the lender, the Government established a debt of $8,326.91 against the veteran. R. at 73. *See* 38 U.S.C. § 3732 (formerly § 1832); 38 C.F.R. § 36.4323(a), (e) (1991); *Travelstead v. Derwinski,* 1 Vet.App. 344, 345 (1991).

The record on appeal shows that, in January 1988, the VA considered Mr. Elkins for a release from liability pursuant to 38 U.S.C. § 1817 (now § 3717) and 38 C.F.R. §§ 36.4323(g) and 36.4508(c), but decided not to recommend the veteran for the release. R. at 65. It appears from the record that the first time that Mr. Elkins was informed of this decision to deny him a release from liability was during a VA Regional Office (VARO) hearing held in March 1989. R. at 80–81.

In November 1988, Mr. Elkins wrote to the VA requesting a waiver of the debt, noting that after he found out that the subsequent purchasers had defaulted on the loan, he "made several attempts to take back the house and continue making payments." He also stated that he did not cause the debt and that repayment would cause him financial hardship. Mr. Elkins also inquired about obtaining a release from liability from the debt. R. at 69. Following the March 1989 VARO hearing (R. at 76–82), a VARO Committee on Waivers and Compromises denied Mr. Elkins' request for a waiver. R. at 83; *see* 38 C.F.R. §§ 1.955–1.970 (1991) (defining the jurisdiction, authority, and duties of the committees). The BVA upheld the denial of the appellant's request for a waiver on the grounds "that recovery of the resulting loan guaranty indebtedness [would] not be

against equity and good conscience." *Jimmie Lee Elkins*, BVA 89–02516, at 4 (Oct. 26, 1989); R. at 104.

ANALYSIS

I. Waiver of Indebtedness.

The appellant sought a waiver of his debt under 38 U.S.C. § 3102(b) (now 38 U.S.C. § 5302(b)) and 38 C.F.R. § 1.964(a). At the time of the application for, and VARO denial of, a waiver, section 3102(b) provided as follows:

With respect to any loan guaranteed, insured, or made under chapter 37 of this title, the [Secretary] may waive payment of an indebtedness to the [Department of Veterans Affairs] by the veteran (as defined in sections 101 and 1801), or his spouse, following default and loss of the property, where the [Secretary] determines that collection of such indebtedness would be against equity and good conscience.

38 U.S.C. § 3102(b) (1988). (The enactment of section 311 of Pub.L. No. 101–237, 103 Stat. 2062, 2076, on December 18, 1989, changed subsection (b) so that, *inter alia,* waiver was made mandatory when the collection would be "against equity and good conscience.") *See Schaper v. Derwinski,* 1 Vet.App. 430, 436 (1991).

The phrase *equity and good conscience* means arriving at a fair decision between the obligor and the Government. In making this determination, consideration will be given to the following elements, which are not intended to be all inclusive:

(1) *Fault of debtor....*

(2) *Balancing of faults....*

(3) *Undue hardship....*

(4) *Defeat the purpose....*

(5) *Unjust enrichment....*

(6) *Changing position to one's detriment....*

38 C.F.R. § 1.965 (1991).

█ Although the Secretary asserts in his brief that the Court should apply the "clearly erroneous" standard in reviewing the decision of the BVA in this case, our review of the determination concerning equity and good conscience is not governed by the clearly erroneous standard of 38 U.S.C. § 7261(a)(4) (formerly § 4061(a)(4)); rather, we review the BVA's determination under 38 U.S.C. § 7261(a)(3)(A), (B), (C), and (D) (formerly § 4061). *Branham v. Derwinski,* 1 Vet.App. 93, 94 (1990). In *Smith v. Derwinski,* 1 Vet.App. 267 (1991), we held that:

Waiver decisions, and the review of such decisions by the BVA, are subject to review by this Court to determine whether the statutory standard was applied in accordance with the regulatory guidance or whether the decision was made in an arbitrary or capricious manner. 38 U.S.C. § 4061(a)(3)(A) (1988) [now § 7261(a)(3)(A) ]; *see Service v. Dulles,* 354 U.S. 363, 77 S.Ct. 1152, 1 L.Ed.2d 1403 (1957) (holding that a decision committed to the "absolute discretion" of an agency head is subject to judicial review when the agency has promulgated regulations governing the exercise of such discretion.)

The scope of review under the "arbitrary and capricious" standard is narrow and a court is not to substitute its judgment for that of the agency. Nevertheless, the agency must examine the relevant data and articulate a satisfactory explanation for its action including a "rational connection between the facts found and the choice made."

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43, 103 S.Ct. 2856, 2866, 77 L.Ed.2d 443 (1983) (quoting *Burlington Truck Lines, Inc. v. United States,* 371 U.S. 156, 168, 83 S.Ct. 239, 246, 9 L.Ed.2d 207 (1962)).

*Smith,* 1 Vet.App. at 279.

In this case, the DISCUSSION AND EVALUATION section of the BVA decision consisted, in its entirety, of the following paragraph:

Although the veteran has reported a worsening financial condition, consideration of financial information and the magnitude of loan guaranty indebtedness leads us to the conclusion that collection of loan guaranty indebtedness, in reasonable monthly installments, if necessary, would not prevent the veteran from pro-

viding himself, and those dependent upon him, with basic necessities of life. Accordingly, undue financial hardship is not demonstrated. It is to be expected that the veteran will accord the same consideration to his VA loan guaranty indebtedness as he would give to any other indebtedness. The Board perceives no other factors in this case which would justify waiver of recovery of the debt under the standard of equity and good conscience.

*Elkins,* BVA 89–02516, at 3–4; R. at 103–04.

In addition to claiming that financial hardship would result for him and his family should he be obliged to repay the debt, Mr. Elkins also has asserted that he is not responsible for the debt because it was not he, but the defaulting purchasers, who caused the debt. R. at 86. Moreover, Mr. Elkins has claimed and the record shows that, upon notification of the default by the subsequent purchasers, he promptly attempted to cure the default and avoid the foreclosure by regaining the property. He immediately telephoned the VA and inquired, *inter alia,* about obtaining a retroactive release from liability. R. at 22, 80–81. He hired an attorney in an effort to convince the subsequent purchasers to deed the property back to him so that he could resume payments on the mortgage, but the defaulting purchasers refused to quit the premises. R. at 22, 76–78; Appellant's Br. at 11–14. Finally, a state court found that the subsequent purchasers had assumed the mortgage note and had agreed to indemnify the VA; the court entered a judgment in favor of the Elkins on their crossclaim and held that the defaulting purchasers "shall indemnify and hold harmless Jimmy L. Elkins and Judy V. Elkins for the entire amount of Plaintiff's recovery, for which sum Judgment is hereby granted to Jimmy L. Elkins and Judy V. Elkins." R. at 50.

■ The Court finds that evidence of the veteran's unsuccessful attempts to provide an early cure for the default, as well as evidence of the state court's judgment that the defaulting purchasers are liable to the Elkins for the entire amount of the debt, is "relevant data" in this case and should have been part of the BVA's "articulat[ion] of a satisfactory explanation for its action." *Smith,* 1 Vet.App. at 279 (quoting *Motor Vehicle Mfrs. Ass'n,* 463 U.S. at 43, 103 S.Ct. at 2866 (quoting *Burlington Truck Lines,* 371 U.S. at 168, 83 S.Ct. at 245–46)). A decision of the Board must provide reasons or bases that will enable the claimant to understand both the decision of the Board and also the Board's response to various arguments advanced by the claimant. *Gilbert v. Derwinski,* 1 Vet.App. 49, 56 (1990); 38 U.S.C. § 7104(d) (formerly § 4004(d)). Accordingly, we remand this case to the BVA to consider the effect, if any, that this evidence has on the decision to grant or deny the waiver request, to account for the evidence it finds persuasive or unpersuasive, and to articulate reasons or bases for its findings and conclusions. *Gilbert,* 1 Vet.App. at 56–57.

## II. Release from Liability.

■ Although the issue of appellant's entitlement to a release from liability was not before the BVA, the Court has jurisdiction to consider the issue under its jurisdictional statute, 38 U.S.C. § 7252(b) (formerly § 4052(b)), which provides that "[r]eview in the Court shall be on the record of proceedings before the Secretary and the Board." In this case the record shows that the VARO considered Mr. Elkins for a release from liability but decided not to recommend him for the release. R. at 65. Therefore, the issue of entitlement to a release was before the "Secretary", and this Court has jurisdiction to review the matter. *Travelstead,* 1 Vet.App. at 346. Moreover, as we stated in *Travelstead,* "this Court has the authority to look at the record before the BVA and necessarily decide whether something should have been before the BVA. When the BVA makes a decision (implicitly or explicitly) not to deal with an issue considered at the VARO level, then that decision not to decide an issue is a decision by the BVA which is properly before this Court." *Travelstead,* 1 Vet. App. at 346.

■ Under 38 U.S.C. § 3713(b) (formerly § 1813(b)), the VA may grant a retroactive release from liability on its guaranty to a veteran who disposes of property securing a VA-guaranteed loan and who fails to obtain a release from such liability from the VA at the time of the disposition of the property. Section 3713(b) provides:

If any veteran disposes of residential property securing a guaranteed, insured, or direct housing loan obtained by the veteran under this chapter without receiving a release from liability with respect to such loan under subsection (a), and a default subsequently occurs which results in liability of the veteran to the Secretary on account of the loan, the Secretary may relieve the veteran of such liability if the Secretary determines, after such investigation as the Secretary deems appropriate, that the property was disposed of by the veteran in such a manner, and subject to such conditions, *that the Secretary would have issued the veteran a release from liability under subsection (a) with respect to the loan if the veteran had made application therefor incident to such disposal.* Failure of the transferee to assume by contract all of the liabilities of the original veteran-borrower shall bar such release of liability only in cases in which no acceptable transferee, either immediate or remote, is legally liable to the Secretary for the indebtedness of the original veteran-borrower arising from termination of the loan. The failure of a veteran to qualify for release from liability under this subsection does not preclude relief from being granted under [section] [5302(b) (formerly § 3102)] of this title, if eligible thereunder.

38 U.S.C. § 3713(b) (1991) (emphasis added). VA's regulation provides that the Secretary may grant a retroactive release of the veteran's liability if the Secretary determines that:

(1) A transferee either immediate or remote is legally liable to the Secretary for the debt of the original veteran-borrower established after the termination of the loan, and

(2) The original loan was current at the time such transferee acquired the property, and

(3) The transferee who is liable to the Secretary is found to have been a satisfactory credit risk at the time [the transferee] acquired the property.

38 C.F.R. § 36.4323(g) (1991).

The record shows that the veteran spoke with a representative of the VA on January 16, 1986, about the possibility of obtaining a retroactive release from liability. R. at 22. The record also reveals that in January 1988 the VA considered the veteran for such a release but did not approve it. R. at 65. The document in the record is in the form of an internal VA memorandum which reveals, with regard to the three criteria noted above in regulation § 36.-4323(g), that the VA considered the loan current at the time that the transferees acquired the property but that the VA did not consider the transferees liable for the debt, nor did the VA consider the transferees a satisfactory credit risk at the time of the assumption of the loan. R. at 65. With regard to the latter, the memorandum shows a space checked under the word "NO" before the following statement: "One or more of the liable transferees was a satisfactory credit risk at the time of the assumption *as demonstrated by payment of 12 or more consecutive installments with no record of default."* R. at 65 (emphasis added). In March 1989, at a hearing before the VARO Committee on Waivers and Compromise, the veteran learned that he had been considered for but denied a retroactive release and was given the following explanation for that denial:

The assumer in this case is not liable. So, if we had release [sic] you, we would have nobody to hold liable, for one. Secondly, one or more of the liable transferees was a satisfactory credit risk at the time of the assumption as demonstrated by a payment of 12 of more consecutive installments with no record of default. *You sold the loan to him and I believe it was three months later, he went into default.* So that makes that out. So that's the reason why you could not be

granted a release of liability. You were considered, however.

R. at 81 (emphasis added). It is clear from the memorandum statement and from the explanation of the criteria given at the hearing that the VA judged the creditworthiness of the transferees based on events subsequent to the time of the disposition of the property, and this Court has held that such a perspective "constitutes a clear misapplication of the law." *Schaper*, 1 Vet. App. at 435. "The law requires the VA to look at the facts as they existed at the time of transfer, not after transfer, in order to determine whether a veteran would have been entitled to a release from liability had he applied for it." *Travelstead*, 1 Vet.App. at 348.

■ However, as we observed in *Schaper*, "it appears that the law and regulation establish three criteria all of which must be met in order to qualify for a retroactive release—namely, at the time of transfer, there must have been (1) a legally liable transferee, (2) currency of loan payments, and (3) a creditworthy transferee. Thus, an error by the Secretary in applying one of the criteria might not be prejudicial error if either or both of the other criteria were clearly not satisfied as a matter of law." *Schaper*, 1 Vet.App. at 435.

Here, according to the VA memorandum, the VA found that the veteran's payments on the loan were current at the time of transfer. However, in addition to concluding that the transferees were not creditworthy, the VA also found that they were not legally liable for the debt. Because there are no reasons or bases noted by the VA for this conclusion and because the BVA did not discuss this issue, the Court cannot determine whether this conclusion was made in accordance with the regulatory guidance or whether the decision was made in an arbitrary or capricious manner. There is no discussion, for example, of the relevance, if any, that the Ohio court's finding that the defaulting purchasers assumed the mortgage and agreed to indemnify the VA has with regard to the question of the legal liability of the transferees to the Secretary at the time of the sale of the proper-

ty. R. at 50. The Secretary observes in his brief that had the veteran applied for a release at the time of the transfer of the property, "the assumption *probably* would not have been approved...." Appellee's Br. at 11 (emphasis added). The word "probably" expresses the VA's own uncertainty as to whether the veteran would have fulfilled the requirements for a release under 38 U.S.C. § 1813(a) (now § 3713(a)) despite the fact that the VA was supposed to have evaluated the veteran for a retroactive release by applying the same criteria retrospectively. 38 U.S.C. § 1813(b) (now 3713(b)); 38 C.F.R. § 36.-4323(g). The Secretary provides no reasons in his brief to support his conclusion that "the assumption probably would not have been approved". Appellee's Br. at 11.

Accordingly, in addition to the remand on the issue of the waiver, this case must be remanded in order for the BVA to readjudicate the matter regarding a retroactive release from liability by applying the correct statutory standard to the facts of this case regarding the creditworthiness of the transferees to determine whether a release from liability would have been granted under 38 U.S.C. § 1813(a) (now § 3713(a)) had the appellant applied for one at the time of the transfer of the property to the subsequent purchasers. Our remand also encompasses the need for a clear and reasoned determination by the BVA with respect to the issue of the subsequent purchasers' legal liability to the Secretary at the time of transfer. *See Schaper*, 1 Vet. App. at 435–36.

## CONCLUSION

For the reasons stated above, the October 26, 1989, decision of the BVA is VACATED and the case REMANDED for readjudication on the waiver issue and for adjudication of the VA's denial of a release from liability.